SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

------------------------------------------------------------------- x

THE CITY OF NEW YORK AND THE NEW YORK
CITY POLICE DEPARTMENT,

                              Petitioner,

              - against -

DISTRICT COUNCIL 9, INTERNATIONAL UNION OF
PAINTERS & ALLIED TRADES, AFL-CIO ("DC-9")

                              Respondent.

------------------------------------------------------------------- x

**VERIFIED PETITION**

Index No:
File No:

**PETITIONER** the City of New York and the New York City Police Department by their attorney, Zachary W. Carter, Corporation Counsel of the City of New York, hereby alleges upon personal knowledge as to himself and upon information and belief as to all other matters as follows:

## PRELIMINARY STATEMENT

1.    This Petition and annexed exhibits are submitted in support of the Order to Show Cause of petitioners THE CITY OF NEW YORK (hereinafter "City"), which seeks an Order pursuant to CPLR 7503(c) and CPLR 7502 (b) permanently staying the arbitration requested by DC-9; and granting a temporary stay of any arbitration proceedings during the pendency of this petition; and for such other and further relief as this Court may deem just and proper.

2.    The necessity of bringing the instant Order to Show Cause is that DC-9 has requested an arbitration hearing be held on March 21st, 2018 regarding a publicly bid procurement contract. The purported grievance sought to be arbitrated by DC-9, however, was brought two months too late, after all bids on the contract were publicly opened. The underlying agreement makes clear that compliance with the timeline for bringing grievances set forth in the

agreement is a condition precedent to arbitration. As such, the City believes that such arbitration should be permanently stayed and will be irreparably prejudiced if forced to engage in arbitration.

## THE PARTIES

3.      The City of New York is a municipal corporation with an office located at 100 Church Street, New York, NY 10007. The New York City Police Department is an agency of the City of New York with offices located at 1 Police Plaza, New York, NY 10007. The City, on behalf of itself and the covered Agencies, the Building and Construction Trades Council of Greater New York and Vicinity (hereinafter "Council"), and the signatory affiliated Local Unions, entered into a Project Labor Agreement covering the Renovation and Rehabilitation of City Owned Buildings and Structures (hereinafter "PLA", annexed hereto as Exhibit A). The PLA provides that only contractors and subcontractors who sign a pre-negotiated agreement with the labor organization can perform project work for specified public work projects pertaining to the rehabilitation and renovation of City owned buildings and structures.

4.      Respondent DC-9 is a Local Union affiliated with the Council with offices located at 45 West 14th Street, New York, NY 10036.  Respondent became a signatory to the PLA and thereafter bound by its terms, on May 29, 2015. (Exhibit A). The City of New York signed the Project Labor Agreement on September 23, 2015. (Exhibit A). The agreement is in effect until December 31, 2018.

## RELEVANT FACTS AND PROCEDURAL HISTORY

5.      On July 14, 2017, the NYPD publicly advertised a solicitation notice in the City Record an Invitation For competitive sealed Bids ("IFB") for a Multi-Year Contract for Plastering, Painting & Exterior Painting at Various NYPD Facilities. Pursuant to that publication

the bids were due and scheduled to be opened on August 8, 2017. The City Record is the official newspaper of the City of New York and where the City is required to advertise Invitations for Bids. Subsequently, the NYPD published several extensions of the due date for bids and the bid opening date. These extensions were published in the City Record on August 15, 2017 extending the bid due date and opening to September 12, 2017 and again on October 4, 2017 extending the bid due date and opening to October 13, 2017. (Exhibit B, City Record). The bids were opened on October 13, 2017 as published in the City Record.

6. The notice of Invitation for Bid that NYPD published in the City Record indicated that a free copy of the contract was available for review and inspection at: 1) online via www.nyc.gov/cityrecord 2) in person Monday – Friday at the Contract Administration Unit at 90 Church Street or 3) by calling Stephanie Gallop at (646) 610-5225. The IFB was available immediately upon the notice of the IFB on July 14, 2017. The IFB remained available throughout the public notice period until bids were due on October 13, 2017.

7. At all times that the IFB that was made available for inspection, beginning on July 14, 2017 through the opening on October 13, 2017, the IFB did not contain a requirement that bidders were or would be required to agree to the PLA in order to perform work under the contract. On October 4, 2017, in a list of publicly available Questions and Answers, the NYPD reiterated what was obvious from July 14, 2017, that the contract was not subject to the PLA.

8. Two months after the bids were opened, on December 12, 2017, DC-9 through their Business Representative Mr. Richard Small, attempted to bring a grievance against the New York City Police Department by emailing a "Step 1 Grievance Form". (Exhibit C). According to the emailed form, the alleged grievance was that a contract bid out by the NYPD had been excluded from the PLA. In short, DC-9 did not agree with the Agency's determination that this contract did not fall under the scope of work covered by the PLA.

9. Article 9 of the PLA outlines the Grievance and Arbitration provisions of the agreement. Per Article 9, Section 1 of the PLA grievances as to "whether work is included or excluded from this Agreement shall be submitted to the Labor Management Committee (LMC) in the first instance rather Step 1". Next, the agreement states that in order "[t]o be timely, such notice must be given no later than ten days prior to a bid opening if the grievance is challenging a determination by an Agency that the contract is not subject to this Agreement." (Exhibit A, Article 9, Section 1). Thus, the purported "Step 1" grievance sent by DC-9 to NYPD was improperly brought both because it did not follow the correct procedure for this type of grievance as expressly provided for in the Agreement, but also, because it was brought two months after the timeline provided in the Agreement. The PLA further states that grievances which fail to comply with the timelines set forth are null and void. (Exhibit A, Article 9, Section 1, Step 3(b)).

10. On January 3rd, 2018, the Office of Corporation Counsel responded to DC-9 by letter informing them that the purported grievance was untimely by nearly two months. The City also noted that the grievance DC-9 sought to bring could not be properly brought through a Step 1 form. Further, the City stated that because this grievance had been untimely and improperly brought, no Step 2 meeting was necessary (or appropriate) and that NYPD would proceed with the contract award. (Exhibit D).

11. Despite the City's letter, DC-9 scheduled a "Step 2" meeting on January 9th, 2018 to discuss their untimely and incorrectly brought grievance. The City, as a courtesy, appeared at the meeting for the sole purpose of informing DC-9 again, that the grievance was untimely, improperly brought and, as far as the City was concerned, a nullity.

12. On February 23rd 2018, at 9:52 p.m., DC-9's attorney Mr. Steven Kern, sent an email to the City and arbitrator Richard Adelman with a letter attachment requesting an

arbitration. (Exhibit E). The City did not receive any Notice of Arbitration by mail or personal service.

13. On February 27, 2018, the City responded to counsel for DC-9 and Mr. Adelman by email with a letter attachment outlining the City's position that a hearing should not be scheduled and that the dispute sought to be arbitrated was untimely by several months, null, void and not subject to the jurisdiction of the arbitrator. (Exhibit F).

14. Nonetheless, counsel for DC-9 has continued to press for a hearing to be held on March 21st, 2018. The City has adamantly refused to schedule or participate in any arbitration proceeding and informed both opposing counsel and the arbitrator that a stay would be sought as the City believes DC-9's purported grievance is null, void and their request to arbitrate should be permanently stayed.

## **ARGUMENT**

15. Civil Practice Laws and Rules Section 7503(b), entitled "Application to stay arbitration," provides that:

> [A] party who has not participated in the arbitration and who has not made or been served with an application to compel arbitration, may apply to stay arbitration on the ground that a valid agreement was not made or has not been complied with or that the claim sought to be arbitrated is barred by limitation under subdivision (b) of section 7502.

16. Thus, on a motion to stay arbitration pursuant to Article 75 there are three threshold questions for the Court: whether the parties made a valid agreement to arbitrate, whether the agreement has been complied with, and whether the claim sought to be arbitrated would be time barred had it been asserted in the relevant State court. See County of Rockland v. Primiano Constr. Co., 51 NY2d 1, 6-7 (1980). Here, the City contends both that Respondent failed to comply with the agreement by not submitting notice of its grievance within the requisite

10-day period prior to the bid opening and that its claim is barred by limitation under CPLR Section 7502(b).

## I. THE COULD SHOULD GRANT A PERMANENT STAY OF ARBITRATION BECAUSE THE NOTICE REQUIREMENT SET FORTH IN THE AGREEMENT SHOULD OPERATE AS A TIME BAR TO ARBITRATION

17.     Pursuant to CPLR 7502(b), "[i]f, at the time that a demand for arbitration was made or a notice of intention to arbitrate was served, the claim sought to be arbitrated would have been barred by limitation of time had it been asserted in a court of the state, a party may assert the limitation as a bar to the arbitration on an application to the court." This provision is most frequently applied as a bar to arbitration when a statutory time limitation has expired. However, it has also been interpreted to apply to contractual time frames and arbitration has been stayed pursuant to this section of the CPLR when a contractual time frame has expired. In Avondale Mills v. Majestic Carpet Mills, Inc., Div. Of Celotex Corp., 400 N.Y.S.2d 59 (1st Dep't 1977), the agreement between the parties required that arbitration proceedings be brought within one year of delivery of the goods and the respondent attempted to institute proceedings outside of this timeline. The First Department reversed the court below and granted a stay of arbitration to the petitioner based on the one year contractual time limitation. The First Department, examining the language of CPLR 7502(b), ruled that it found "no support for a distinction to be drawn between contractual and statutory limitations of time, and the applicability of either type of limitation as a bar to arbitration is a preliminary issue for court determination." Id at 59.

18.     The same reasoning should be applied to the instant matter. The agreement provides that grievances regarding an Agency determination as to whether a contract falls within the scope of the PLA must be brought at least 10 days prior to the bid opening. (Exhibit A, Article 9. Section 1). It further expressly states that failure of the grieving party to adhere to that time limit shall render the grievance null and void, and therefore non-arbitrable. (Exhibit A,

Article 9, Section 1, Step 3(b)). Per the court's holding in Avondale, this Court should find that the sought arbitration is time barred pursuant to 7502(b) and permanently stay the requested arbitration.

## II. THE COURT SHOULD GRANT A PERMANENT STAY OF ARBITRATION BECAUSE THE UNION FAILED TO COMPLY WITH THE CONDITIONS PRECEDENT TO ARBITRATION CONTAINED IN THE AGREEMENT

19.     The request for arbitration should also be stayed because the Respondent has failed to comply with the subject agreement. As part of its analysis into whether a party has complied with a subject agreement, the Court may inquire into whether that party has complied with any conditions precedent to bringing arbitration contained in the agreement. See id. There are two different types of conditions precedent: statutory and contractual.   When a statute requires the parties to a contract to comply with set timelines prior to bringing a grievance, compliance with the statute is a condition precedent which is properly within the jurisdiction of the court.  See, Matter of Board of Educ. (Wager Constr. Corp.) (37 NY2d 283) (1975) (holding that Section 3813 of the Education Law, which requires a complainant to serve a timely notice of claim upon boards of education, constitutes a condition precedent to arbitration, the fulfillment of which is a question for the court).

20.     A contractual condition precedent, conversely, is one that is included by the parties' to the agreement and limits the time or manner in which claims arising under the contract may be brought to arbitration.   When determining whether a contractual condition precedent is subject to judicial review, of critical importance is determining whether the arbitration agreement is broad or narrow.   A broad arbitration clause is one that evinces the parties' intent to have all grievances arising under an agreement arbitrated. See, e.g. State of NY v. Philip Morris Inc., 30 AD3d 26, 31 (1st Dept. 2006); Metalink Mar. Corp. v. Ned Chartering & Trading, 207 AD2d 688, 689 (1st Dept. 1994).  A narrow arbitration clause is one that limits

the scope of arbitrable disputes to only certain kinds of claims, and are generally reviewable by the court. See Gerling Global Reins. Corp. v Home Ins. Co., 302 AD2d 118, 124 (1st Dept. 2002). The PLA arguably is a broad arbitration clause.

21.    With respect to judicial review of contractual timelines in the context of broad arbitration agreements, the Court of Appeals has held that contractual timeliness limitations are appropriate for review by the judiciary rather than the arbitrator. In Board of Education v. Heckler Electric Co., 7 N.Y.2d 476 (1960), the Court of Appeals wrote:

> [a]lthough, on occasion, this court has used very broad language to the effect that the *only* issues a court may deal with on an application for a stay of arbitration are as to the making of the contract or submission or the failure to comply we did not mean thereby to suggest that the arbitrator possesses the power to decide whether the conditions precedent to the institution of the arbitration proceeding itself had been fulfilled.

The Heckler Court went on to note that, in Matter of Cauldwell-Wingate Co. (New York City Housing Auth.) (287 N. Y. 853) (1941), an application to compel arbitration was denied on the ground that the petitioner had failed to demand arbitration within the time prescribed by the contract. Citing Matter of Cauldwell, the Court wrote "it was this court's view that the contract itself made compliance with its 'time' provisions a condition precedent to arbitration, with the consequence that failure to act within the specified time deprived the petitioner of its right to arbitration." Heckler 7 N.Y.2d at 482.

22.    Furthering the holding in Heckler, the Court of Appeals in United Nations Dev. Corp. v. Norkin Plumbing Co., 45 NY2d 358, 363 (1978) held that "[n]otwithstanding the existence of a broad arbitration clause, compliance with contractual limitations, expressly made conditions precedent to arbitration by the parties' agreement, is a question for threshold judicial resolution." The distinction, then, between a condition precedent that is proper for judicial review and one proper for the arbitrators turns on whether "the condition imposed by [the parties'] agreement is an express or implied condition precedent." Id. at 362. If the agreement

contains an express condition precedent, as the subject agreement does, it is reviewable only by the court. Thus, even if a contract contains a broad arbitration clause, compliance with contractual limitations that are made conditions precedent to arbitration by the parties' agreement is a question for judicial determination.

23. For example, in Matter of Raisler Corp (New York City Housing Auth.), 32 NY2d 274 (1972), the parties had entered into an agreement that contained a broad arbitration clause. However, it also contained a timeliness provision requiring that any grievance under the contract had to be made in writing within five days after the claim had arisen and that failure to provide that notice precluded the aggrieved party from arbitrating the claim. Matter of Raisler Corp. at 274. The Court of Appeals held that the timeliness provision was reviewable only by the Court and not by the arbitrator because the provision made the arbitrability of grievances under the contract expressly contingent on satisfying the five-day notice rule. Id. See also Methodist Church of Babylon v Glen-Rich Constr. Corp., 29 AD2d 773 (2d Dept. 1968) ("

24. Similarly, in Silverstein Props., Inc. v. Paine, Webber, Jackson & Curtis, Inc., 65 NY2d 785 (1985) the contract between a landlord and a tenant required the tenant to provide the landlord written notice of any dispute over certain portions of the rent within thirty days after receiving an invoice from the landlord. Id., at 787. The agreement went on to say that any such dispute would be resolved by arbitration. Id. The Court of Appeals granted the permanent stay of arbitration finding that "the parties have employed a narrow clause limiting the arbitrator to deciding substantive disputes commenced within the time fixed by the contract." Id. at 788.

25. As such, even if an agreement contains a broad arbitration clause, provisions that require the parties to provide notice of a grievance within a specified time period and make access to arbitration contingent on satisfying that provision are not reviewable by an

arbitrator.  Instead, those provisions are conditions precedent that may only be reviewed by the Court.

26.     Here, although the PLA arguably contains a broad arbitration clause, Article 9 of the agreement between the parties clearly contains an express condition precedent to arbitration.  Article 9 provides that the Union must provide the City with notice of its grievance at least 10 days prior to the bid opening of the subject contract.  Exhibit A.  Article 9, Section 1, Step 3(b) explicitly states, "failure of the grieving party to adhere to the time limits set forth in this article shall render the grievance null and void."  Id.  Thus, the terms of the agreement expressly provide that, in order to arbitrate a grievance, the Union must first comply with the timeliness condition set forth.  The City and the Union, by including this provision, "employed a narrow clause limiting the arbitrator to deciding substantive disputes commenced within the time fixed by the contract."  Silverstein Props, 65 NY2d at 787.

27.     As stated above, DC-9 attempted to bring this grievance two months after the time frame set forth in the agreement. As a result, they have wholly failed to comply with the condition precedent, the grievance is null and void and the claim should not be submitted to arbitration proceedings.

28.     The overall scheme and plain language of the PLA make it clear that the parties intended the timeliness clause to act as a condition precedent.  The language rendering untimely grievances null and void was negotiated at arms-length to ensure that the City was not prejudiced by untimely grievances.  This provision is necessary to protect the City's competitive bidding procurement scheme as necessitated by Section 103 of General Municipal Law. This provision was crafted to ensure that City contractors did not suffer prejudice from having their bids publicly opened and disclosed to their competitors only to have the initial bids rescinded and forced into a new competition.  Moreover, this provision was specifically drafted to prevent

delays in the execution of publicly bid contracts because allowing untimely grievances to be arbitrated irrespective of their willful failure to comply with the timeline set forth in the agreement creates delays by allowing a Local Union to prevent the City from proceeding with its contracts during the pendency of the untimely grievance. The City and its contractors are irreparably prejudiced by the Union's attempt to ignore the plain language of the contract and arbitrate a non-existent grievance.

29.     Further, the City should not be compelled to enter into any arbitration proceedings during the pendency of this petition. The language of CPLR 7502(b) expressly states that a party may first seek relief from the Court to enforce a time bar but may not invoke this provision if the issue of timeliness has been raised with the arbitrator. The City wishes to prevent any prejudice to its ability to invoke this provision of the CPLR that may result from being forced to arbitrate the timeliness of the grievance in front of the arbitrator prior to this Court issuing its ruling. Furthermore, there are several cases throughout the Appellate Divisions which find that a party may waive its right to apply for a stay of arbitration if it engages in arbitration proceedings. The City does not wish to waive, in any way, its right to request a stay of arbitration. Finally, cases have held that a party forfeited its right to appeal the Supreme Court's denial of its application because the proceeded to arbitration before an appeal was brought. Allstate Ins. Co. v Romero, 279 AD2d 522 (2d Dept 2001). As the City could potentially be found to have forfeited its right to request a stay under CPLR 7503(c) or CPLR 7502(b) or forfeit its right to appeal any determination of this Court should it be compelled to engage in arbitrations, the City respectfully requests that a temporary stay be issued during the pendency of this petition.

## CONCLUSION

30.     In sum, the purported grievance sought to be arbitrated by DC-9 was brought two months outside the timeline set by the PLA. The requirement to bring a timely grievance contained in the PLA is a condition precedent to arbitration. It is a condition precedent because it narrowly and expressly makes access to arbitration contingent upon complying with the timeliness provision. The compliance of a party with a condition precedent to arbitration is an issue reviewable by the Court. The City has demonstrated the Respondent did not comply with the condition precedent. Therefore, this Court should find that the alleged grievance was untimely, null and void and that the requested arbitration be stayed pursuant to the CPLR.

31.     No prior application for the relief sought herein has been made.


**WHEREFORE,** defendants THE CITY OF NEW YORK, respectfully requests its Order to Show Cause seeking an Order permanently staying the requested arbitration and a temporary stay during the pendency of this petition be granted in its entirety, and for such other and further relief as this Court may deem just and proper.

Dated:      New York, New York
            March 12, 2018

                                    _____
                                    LINDSEY M. JAMES
                                    Senior Counsel

# VERIFICATION

STATE OF NEW YORK    )
                               )     ss.:
COUNTY OF NEW YORK  )

        LINDSEY MORGAN JAMES being duly sworn, deposes and says that she is an Assistant Corporation Counsel in the office of Zachary W. Carter, Corporation Counsel of the City of New York; the City of New York and the New York City Police Department are petitioners in the within proceeding; that the allegations in the Petition as to the facts are true to her knowledge; that she believes to be true any matters alleged therein upon information and belief; and that her knowledge is based on her personal knowledge, the books and records of the Petitioners, and/or statements made to her by officers or employees thereof. This verification is not made by the Petitioners because the petitioners are a municipal corporation and a department of a municipal corporation.

_____
Lindsey Morgan James

Sworn to before me this
12th Day of March 2018

_____
NOTARY PUBLIC

Index No:

| |
|---|
| SUPREME COURT OF THE STATE OF NEW YORK COUNTY OF NEW YORK |
| THE CITY OF NEW YORK AND THE NEW YORK CITY POLICE DEPARTMENT,<br><br>Petitioner,<br><br>- against -<br><br>DISTRICT COUNCIL 9, INTERNATIONAL UNION OF PAINTERS & ALLIED TRADES, AFL-CIO ("DC-9")<br><br>Defendant(s).. |
| **ORDER TO SHOW CAUSE AND VERIFIED PETITION** |
| *ZACHARY W. CARTER*<br>*Corporation Counsel of the City of New York*<br>*100 Church Street, 5th Floor*<br>*New York , New York 10007*<br><br>*By: LINDSEY MORGAN JAMES*<br>*Tel: (212) 356-3182*<br>*LJAMES@LAW.NYC.GOV* |
| *Due and timely service is hereby admitted.*<br><br>*New York, N.Y. ........................................, 2018.*<br><br>*....................................................................Esq.*<br><br>*Attorney for.........................................................* |



**BUILDING &
CONSTRUCTION
TRADES COUNCIL**
OF GREATER NEW YORK

AFFILIATED WITH THE
BUILDING CONSTRUCTION TRADES DEPARTMENT
OF WASHINGTON D.C.
—
BUILDING AND CONSTRUCTION TRADES COUNCIL
OF NEW YORK STATE
—
AMERICAN FEDERATION OF LABOR OF CONGRESS
OF INDUSTRIAL ORGANIZATION

**GARY LaBARBERA**
PRESIDENT

August 3, 2015

To: All Affiliates

From: Gary LaBarbera

Re: Finalized Project Labor Agreement

As you are aware, the Building and Construction Trades Department of Washington, D.C. has approved the following project. This letter is to inform you that the PLA listed has been fully executed by all parties.

- **NYC Agency Renovation & Rehab City Owned Buildings/Structures PLA**

Attached please find a fully executed copy of the agreement. If you have any questions, please do not hesitate to contact our office.

Yours in Solidarity

Gary LaBarbera

NYC AGENCY RENOVATION & REHAB CITY OWNED
BUILDINGS/STRUCTURES PLA

IN WITNESS WHEREOF the parties have caused this Agreement to be executed and

effective as of the ___ day of_____ ___, _____

FOR BUILDING AND CONSTRUCTION TRADES COUNCIL
OF GREATER NEW YORK AND VICINITY

BY: _____

Gary LaBarbera
President

FOR NEW YORK CITY

BY:

Anthony Shorris
First Deputy Mayor

APPROVED AS TO FORM:

_____

ACTING CORPORATION COUNSEL
NEW YORK CITY

54

Execution Copy 2015-2018

NYC AGENCY RENOVATION & REHAB CITY OWNED
BUILDINGS/STRUCTURES PLA

IN WITNESS WHEREOF the parties have caused this Agreement to be executed and

effective as of the ___ day of _____ . _____

FOR BUILDING AND CONSTRUCTION TRADES COUNCIL
OF GREATER NEW YORK AND VICINITY

BY: _____      _____ _____
        Gary LaBarbera
        President

FOR NEW YORK CITY

BY:
        Anthony Shorris
        First Deputy Mayor

APPROVED AS TO FORM:

ACTING CORPORATION COUNSEL
NEW YORK CITY

SEP 23 2015

54

NYC AGENCY RENOVATION & REHAB CITY OWNED
BUILDINGS/STRUCTURES PLA

**BUILDING AND CONSTRUCTION TRADES COUNCIL OF GREATER NEW
YORK AND VICINITY AFFILIATE EXECUTION PAGE FOR
PROJECT LABOR AGREEMENT**

TO:     Joseph Azzopardi, Business Manager – Drywall Tapers 1974
        District Council 9

FROM:   Gary LaBarbera, President – Building and Construction Trades Council of
        Greater New York and Vicinity.

The Executive Board of the Building and Construction Trades Council of Greater New
York has approved the Project Labor Agreement enclosed herewith. Additionally, the
Building Trades Department of the AFL-CIO has approved the same. This Project Labor
Agreement has also been executed by the Construction Manager/General
Contractor/Owner-Developer.

Pursuant to the Executive Board and BCTD approval of this PLA, please execute below,
which shall constitute your agreement with the PLA and make the PLA valid, binding and
enforceable.

Acknowledged and agreed to by:

_____          _5/29/15_____
Signature                                  Date

_____
Print name

_____
Title and Local

Execution Copy 2015-2018

NYC AGENCY RENOVATION & REHAB OF CITY OWNED BUILDINGS/STRUCTURES
PLA

## PROJECT LABOR AGREEMENT

## COVERING SPECIFIED

## RENOVATION & REHABILITATION
## OF CITY OWNED BUILDINGS AND STRUCTURES

## 2015 - 2018

NYC AGENCY RENOVATION & REHAB OF CITY OWNED BUILDINGS/STRUCTURES PLA

## TABLE OF CONTENTS

Page

**ARTICLE 1 - PREAMBLE** ........................................................................................1

SECTION 1. PARTIES TO THE AGREEMENT...............................................................2

ARTICLE 2 - GENERAL CONDITIONS ...................................................................3

SECTION 1. DEFINITIONS ...........................................................................................3

SECTION 2. CONDITIONS FOR AGREEMENT TO BECOME EFFECTIVE ...........................................................................................................4

SECTION 3. ENTITIES BOUND & ADMINISTRATION OF AGREEMENT ...........................................................................................................4

SECTION 4. SUPREMACY CLAUSE ............................................................................4

SECTION 5. LIABILITY...................................................................................................5

SECTION 6. THE AGENCY ............................................................................................6

SECTION 7. AVAILABILITY AND APPLICABILITY TO ALL SUCCESSFUL BIDDERS...........................................................................................6

SECTION 8. SUBCONTRACTING .................................................................................7

ARTICLE 3-SCOPE OF THE AGREEMENT ...........................................................7

SECTION 1. WORK COVERED .....................................................................................7

SECTION 2. TIME LIMITATIONS .................................................................................9

SECTION 3. EXCLUDED EMPLOYEES ........................................................................9

SECTION 4. NON-APPLICATION TO CERTAIN ENTITIES.......................................11

ARTICLE 4- UNION RECOGNITION AND EMPLOYMENT ...................................12

SECTION 1. PRE-HIRE RECOGNITION .....................................................................12

i

NYC AGENCY RENOVATION & REHAB CITY OWNED BUILDINGS/STRUCTURES PLA

SECTION 2. UNION REFERRAL.................................................................12

SECTION 3. NON-DISCRIMINATION IN REFERRALS ...........................14

SECTION 4: MINORITY AND FEMALE REFERRALS...............................14

SECTION 5. CROSS AND QUALIFIED REFERRALS ................................16

SECTION 6. UNION DUES.......................................................................16

SECTION 7. CRAFT FOREPERSONS AND GENERAL FOREPERSONS ...................16

SECTION 8. ON CALL REPAIR REFERRALS ........................................17

ARTICLE 5- UNION REPRESENTATION....................................................18

SECTION 1. LOCAL UNION REPRESENTATIVE.....................................18

SECTION 2. STEWARDS .........................................................................19

SECTION 3. LAYOFF OF A STEWARD.....................................................19

ARTICLE 6- MANAGEMENT'S RIGHTS ....................................................20

SECTION 1. RESERVATION OF RIGHTS .................................................20

SECTION 2. MATERIALS, METHODS & EQUIPMENT.............................20

ARTICLE 7- WORK STOPPAGES AND LOCKOUTS...................................21

SECTION 1. NO STRIKES-NO LOCK OUT ..............................................21

SECTION 2. DISCHARGE FOR VIOLATION............................................22

SECTION 3. NOTIFICATION ..................................................................22

SECTION 4. EXPEDITED ARBITRATION................................................23

SECTION 5. ARBITRATION OF DISCHARGES FOR VIOLATION ...........25

ARTICLE 8 - LABOR MANAGEMENT COMMITTEE ...............................25

ii

NYC AGENCY RENOVATION & REHAB CITY OWNED BUILDINGS/STRUCTURES PLA

SECTION 1. SUBJECTS ................................................................25

SECTION 2. COMPOSITION ............................................................25

ARTICLE 9- GRIEVANCE & ARBITRATION PROCEDURE....................................26

SECTION 1. PROCEDURE FOR RESOLUTION OF GRIEVANCES ...........................26

SECTION 2. LIMITATION AS TO RETROACTIVITY ...................................29

SECTION 3. PARTICIPATION BY AGENCY AND/OR CONSTRUCTION
MANAGER ........................................................................29

ARTICLE 10 - JURISDICTIONAL DISPUTES .........................................30

SECTION 1. NO DISRUPTIONS .....................................................30

SECTION 2. ASSIGNMENT .........................................................30

SECTION 3. NO INTERFERENCE WITH WORK .........................................30

ARTICLE 11 - WAGES AND BENEFITS...............................................31

SECTION 1. CLASSIFICATION AND BASE HOURLY RATE ...............................31

SECTION 2. EMPLOYEE BENEFITS ..................................................31

ARTICLE 12- HOURS OF WORK, PREMIUM PAYMENTS,.................................37
SHIFTS AND HOLIDAYS ...........................................................37

SECTION 1. WORK WEEK AND WORK DAY ............................................37

SECTION 2. OVERTIME ...........................................................38

SECTION 3. SHIFTS..............................................................39

SECTION 4. HOLIDAYS ...........................................................40

SECTION 5. SATURDAY MAKE-UP DAYS .............................................40

SECTION 6. REPORTING PAY ......................................................41

iii

Execution Copy 2015-2018

NYC AGENCY RENOVATION & REHAB CITY OWNED BUILDINGS/STRUCTURES PLA

SECTION 7. PAYMENT OF WAGES ......................................................................42

SECTION 8. EMERGENCY WORK SUSPENSION ...................................................43

SECTION 9. INJURY/DISABILITY ........................................................................43

SECTION 10. TIME KEEPING ..............................................................................43

SECTION 11. MEAL PERIOD ...............................................................................43

SECTION 12. BREAK PERIODS ...........................................................................44

ARTICLE 13 - APPRENTICES ..............................................................................44

SECTION 1. RATIOS ..........................................................................................44

ARTICLE 14-SAFETY PROTECTION OF PERSON AND PROPERTY ......................45

SECTION 1. SAFETY REQUIREMENTS ................................................................45

SECTION 2. CONTRACTOR RULES .....................................................................45

SECTION 3. INSPECTIONS .................................................................................46

ARTICLE 15 - TEMPORARY SERVICES ...............................................................46

ARTICLE 16 - NO DISCRIMINATION ...................................................................46

SECTION 1. COOPERATIVE EFFORTS ................................................................46

SECTION 2. LANGUAGE OF AGREEMENT ..........................................................47

ARTICLE 17- GENERAL TERMS .........................................................................47

SECTION 1. PROJECT RULES ............................................................................47

SECTION 2. TOOLS OF THE TRADE ...................................................................47

SECTION 3. SUPERVISION ................................................................................48

SECTION 4. TRAVEL ALLOWANCES ...................................................................48

Execution Copy 2015-2018

NYC AGENCY RENOVATION & REHAB CITY OWNED BUILDINGS/STRUCTURES PLA

SECTION 5. FULL WORK DAY ...........................................................................48

SECTION 6. COOPERATION AND WAIVER ......................................................48

ARTICLE 18. SAVINGS AND SEPARABILITY ...................................................49

SECTION 1. THIS AGREEMENT.........................................................................49

SECTION 2. THE BID SPECIFICATIONS ...........................................................49

SECTION 3. NON–LIABILITY ............................................................................50

SECTION 4. NON–WAIVER .................................................................................50

ARTICLE 19 - FUTURE CHANGES IN SCHEDULE A AREA
CONTRACTS.........................................................................................................51

SECTION 1. CHANGES TO AREA CONTRACTS ..............................................51

SECTION 2. LABOR DISPUTES DURING AREA CONTRACT
NEGOTIATIONS....................................................................................................51

ARTICLE 20 - WORKERS' COMPENSATION ADR............................................52

SECTION 1. ...........................................................................................................52

ARTICLE 21 - HELMETS TO HARDHATS ........................................................52

SECTION 1. ...........................................................................................................52

SECTION 2. ...........................................................................................................52

Project Labor Agreement - - Letter of Assent............................................................96

New York City Building And Construction Trades Council Standards of
Excellence ...........................................................................................................98

v

NYC AGENCY RENOVATION & REHAB CITY OWNED
BUILDINGS/STRUCTURES PLA

### PROJECT LABOR AGREEMENT COVERING SPECIFIED RENOVATION & REHABILITATION OF NEW YORK CITY OWNED FACILITIES & STRUCTURES

### ARTICLE 1 – PREAMBLE

WHEREAS, the City of New York desires to provide for the cost efficient, safe, quality, and timely completion of certain rehabilitation and renovation work ("Program Work," as defined in Article 3) in a manner designed to afford the lowest costs to the Agencies covered by this Agreement, and the Public it represents, and the advancement of permissible statutory objectives;

WHEREAS, this Project Labor Agreement will foster the achievement of these goals, inter alia, by:

(1)     providing a mechanism for responding to the unique construction needs associated with this Program Work and achieving the most cost effective means of construction, including direct labor cost savings, by the Building and Construction Trades Council of Greater New York and Vicinity and the signatory Local Unions and their members waiving various shift and other hourly premiums and other work and pay practices which would otherwise apply to Program Work;

(2)     expediting the construction process and otherwise minimizing the disruption to the covered Agencies' ongoing operations at the facilities that are the subject of the Agreement;

(3)     avoiding the costly delays of potential strikes, slowdowns, walkouts, picketing and other disruptions arising from work disputes, reducing jobsite friction on common situs worksites, and promoting labor harmony and peace for the duration of the Program Work;

(4)     standardizing the terms and conditions governing the employment of labor on Program Work;

(5)     permitting wide flexibility in work scheduling and shift hours and times to allow maximum work to be done during off hours yet at affordable pay rates;

1

NYC AGENCY RENOVATION & REHAB CITY OWNED
BUILDINGS/STRUCTURES PLA

(6)     permitting adjustments to work rules and staffing requirements from those which otherwise might obtain;

(7)     providing comprehensive and standardized mechanisms for the settlement of work disputes, including those relating to jurisdiction;

(8)     ensuring a reliable source of skilled and experienced labor; and

(9)     securing applicable New York State Labor Law exemptions.

WHEREAS, the Building and Construction Trades Council of Greater New York and Vicinity, its participating affiliated Local Unions and their members, desire to assist the City in meeting these operational needs and objectives as well as to provide for stability, security and work opportunities which are afforded by this Project Labor Agreement; and

WHEREAS, the Parties desire to maximize Program Work safety conditions for both workers and the community in the project area.

NOW, THEREFORE, the Parties enter into this Agreement:

**SECTION 1. PARTIES TO THE AGREEMENT**

This is a Project Labor Agreement ("Agreement") entered into by the City of New York, on behalf of itself and the Agencies covered herein, including in their capacity as construction manager of covered projects and/or on behalf of any third party construction manager which may be utilized, and the Building and Construction Trades Council of Greater New York and Vicinity ("Council") (on behalf of itself) and the signatory affiliated Local Union's ("Unions" or "Local Unions"). The Council and each signatory Local Union hereby warrants and represents that it has been duly authorized to enter into this Agreement.

2

NYC AGENCY RENOVATION & REHAB CITY OWNED
BUILDINGS/STRUCTURES PLA

## ARTICLE 2 – GENERAL CONDITIONS

### SECTION 1. DEFINITIONS

Throughout this Agreement, the various Union parties including the Building and Construction Trades Council of Greater New York and Vicinity and its participating affiliated Local Unions, are referred to singularly and collectively as "Union(s)" or "Local Unions"; the term "Contractor(s)" shall include any Construction Manager, General Contractor and all other contractors, and subcontractors of all tiers engaged in Program Work within the scope of this Agreement as defined in Article 3; "Agency" means the following New York City agencies: the Department for the Aging (DFTA), Administration for Children's Services (ACS), Department of Citywide Administrative Services (DCAS), Department of Correction (DOC), Department of Design and Construction (DDC), Fire Department (FDNY), Department of Homeless Services (DHS), Human Resources Administration (HRA), Department of Health and Mental Hygiene (DOHMH), Department of Parks and Recreation (DPR), Police Department (NYPD); Department of Sanitation (DSNY); the New York City Agency that awards a particular contract subject to this Agreement may be referred to hereafter as the "Agency"; when an Agency acts as Construction Manager, unless otherwise provided, it has the rights and obligations of a "Construction Manager" in addition to the rights and obligations of an Agency; the Building and Construction Trades Council of Greater New York and Vicinity is referred to as the ["BCTC" or "Council"]; and the work covered by this Agreement (as defined in Article 3) is referred to as "Program Work."

3

NYC AGENCY RENOVATION & REHAB CITY OWNED
BUILDINGS/STRUCTURES PLA

## SECTION 2. CONDITIONS FOR AGREEMENT TO BECOME EFFECTIVE

This Agreement shall not become effective unless each of the following conditions are met: the Agreement is executed by (1) the Council, on behalf of itself, (2) the participating affiliated Local Unions; and (3) the mayor of the City of New York or his designee.

## SECTION 3. ENTITIES BOUND & ADMINISTRATION OF AGREEMENT

This Agreement shall be binding on all participating Unions and their affiliates, the Construction Manager (in its capacity as such) and all Contractors of all tiers performing Program Work, as defined in Article 3. The Contractors shall include in any subcontract that they let for performance during the term of this Agreement a requirement that their subcontractors, of all tiers, become signatory and bound by this Agreement with respect to that subcontracted work falling within the scope of Article 3 and all Contractors (including subcontractors) performing Program Work shall be required to sign a "Letter of Assent" in the form annexed hereto as Exhibit "A". This Agreement shall be administered by the applicable Agency or a Construction Manager or such other designee as may be named by the Agency or Construction Manager, on behalf of all Contractors.

## SECTION 4. SUPREMACY CLAUSE

This Agreement, together with the local Collective Bargaining Agreements appended hereto as Schedule A, represents the complete understanding of all signatories and supersedes any national agreement, local agreement or other collective bargaining agreement of any type which would otherwise apply to this Program Work, in whole or in part, except that Program Work which falls within the jurisdiction of the Operating

4

NYC AGENCY RENOVATION & REHAB CITY OWNED
BUILDINGS/STRUCTURES PLA

Engineers Locals 14 and 15 will be performed under the terms and conditions set out in the Schedule A agreements of Operating Engineers Locals 14 and 15. The Collective Bargaining Agreements of the affiliated local unions that cover the particular type of construction work to be performed by the contractor, and as set forth in the Schedule A list of Agreements, shall be deemed the Schedule A Collective Bargaining Agreements ("Schedule A CBA") under this Agreement. Where association and independent Collective Bargaining Agreements for a particular type of construction work are both set forth in Schedule A, association members shall treat the applicable association agreement as the Schedule A CBA and independent contractors shall treat the applicable independent agreement as the Schedule A CBA. Subject to the foregoing, where a subject covered by the provisions of this Agreement is also covered by a Schedule A Collective Bargaining Agreement, the provisions of this Agreement shall prevail. It is further understood that no Contractor shall be required to sign any other agreement as a condition of performing Program Work. No practice, understanding or agreement between a Contractor and a Local Union which is not set forth in this Agreement shall be binding on this Program Work unless endorsed in writing by the Construction Manager or such other designee as may be designated by the Agency.

### SECTION 5. LIABILITY

The liability of any Contractor and the liability of any Union under this Agreement shall be several and not joint. The Construction Manager and any Contractor shall not be liable for any violations of this Agreement by any other Contractor; and the

5

NYC AGENCY RENOVATION & REHAB CITY OWNED
BUILDINGS/STRUCTURES PLA

Council and Local Unions shall not be liable for any violations of this Agreement by any

other Union.

## SECTION 6. THE AGENCY

The Agency (or Construction Manager where applicable) shall require in its

bid specifications for all Program Work within the scope of Article 3 that all successful

bidders, and their subcontractors of all tiers, become bound by, and signatory to, this

Agreement. The Agency (or Construction Manager) shall not be liable for any violation of

this Agreement by any Contractor. It is understood that nothing in this Agreement shall be

construed as limiting the sole discretion of the Agency or Construction Manager in

determining which Contractors shall be awarded contracts for Program Work. It is further

understood that the Agency or Construction Manager has sole discretion at any time to

terminate, delay or suspend the Program Work, in whole or part, on any Program.

## SECTION 7. AVAILABILITY AND APPLICABILITY
## TO ALL SUCCESSFUL BIDDERS

The Unions agree that this Agreement will be made available to, and will

fully apply to, any successful bidder for (or subcontractor of) Program Work who becomes

signatory thereto, without regard to whether that successful bidder (or subcontractor)

performs work at other sites on either a union or non-union basis and without regard to

whether employees of such successful bidder (or subcontractor) are, or are not, members of

any unions. This Agreement shall not apply to the work of any Contractor which is

performed at any location other than the site of Program Work.

6.

NYC AGENCY RENOVATION & REHAB CITY OWNED
BUILDINGS/STRUCTURES PLA

### SECTION 8. SUBCONTRACTING

Contractors will subcontract Program Work only to a person, firm or corporation who is or agrees to become party to this Agreement.

### ARTICLE 3-SCOPE OF THE AGREEMENT

### SECTION 1. WORK COVERED

Program Work shall be limited to designated rehabilitation and renovation construction contracts bid and let by an Agency (or its Construction Manager where applicable) after the effective date of this Agreement with respect to rehabilitation and renovation work performed for an Agency on City-owned property under contracts let prior to December 31, 2018. Subject to the foregoing, and the exclusions below, such Program Work shall mean any and all contracts that predominantly involve the renovation, repair, alteration, rehabilitation or expansion of an existing City-owned building or structure within the five boroughs of New York City. Examples of Program Work include, but are not limited to, the renovation, repair, alteration and rehabilitation of an existing temporary or permanent structure, or an expansion of above ground structures located in the City on a City-owned building. This Program Work shall also include JOCS contracts, demolition work, site work, asbestos and lead abatement, painting services, carpentry services, and carpet removal and installation, to the extent incidental to such building rehabilitation of City-owned buildings or structures.

It is understood that, except where the City specifically applies this Project Labor Agreement to such work in its bid documents, Program Work does not include, and this Project Labor Agreement shall not apply to, any other work, including:

7

NYC AGENCY RENOVATION & REHAB CITY OWNED
BUILDINGS/STRUCTURES PLA

1. Contracts let and work performed in connection with projects carried over, recycled from, or performed under bids or rebids relating to work that were bid prior to the effective date of this Agreement or after December 31, 2018;

2. Contracts procured on an emergency basis;

3. Contracts that do not exceed $250,000;

4. Contracts for work on streets and bridges and for the closing or environmental remediation of landfills;

5. Contracts with not-for-profit corporations where the City is not awarding or performing the work performed for that entity;

6. Contracts with governmental entities where the City is not awarding or performing the work performed for that entity;

7. Contracts with electric utilities, gas utilities, telephone companies, and railroads, except that it is understood and agreed that these entities may only install their work to a demarcation point, e.g. a telephone closet or utility vault, the location of which is determined prior to construction and employees of such entities shall not be used to replace employees performing Program Work pursuant to this agreement;

8. Contracts for installation of information technology that are not otherwise Program Work;

9. Task Orders or Work Orders issued under JOCS or Requirements Contracts that do not exceed $10,000, and JOCS or Requirements Contracts where the monetary value of such contracts predominantly involves such Task Orders or Work

8

NYC AGENCY RENOVATION & REHAB CITY OWNED
BUILDINGS/STRUCTURES PLA

Orders; and

10.     Contracts that do not exceed $1 Million that are awarded pursuant to prequalified lists (PQLs) established by City agencies where entry on to the PQL is restricted to MWBEs, or a combination of MWBEs together with joint ventures which include at least one MWBE, or contractors who agree to subcontract at least 50% of the contract to MWBEs.

## SECTION 2. TIME LIMITATIONS

In addition to falling within the scope of Article 3, Section 1, to be covered by this Agreement Program Work must be (1) advertised and let for bid after the effective date of this Agreement, and (2) let for bid prior to December 31, 2018, the expiration date of this Agreement. It is understood that this Agreement, together with all of its provisions, shall remain in effect for all such Program Work until completion, even if not completed by the expiration date of the Agreement. If Program Work otherwise falling within the scope of Article 3, Section 1 is not let for bid by the expiration date of this Agreement, this Agreement may be extended to that work by mutual agreement of the parties.

## SECTION 3. EXCLUDED EMPLOYEES

The following persons are not subject to the provisions of this Agreement, even though performing Program Work:

A.      Superintendents, supervisors (excluding general and forepersons specifically covered by a craft's Schedule A), engineers, professional engineers and/or licensed architects engaged in inspection and testing, quality control/assurance personnel, timekeepers, mail carriers, clerks, office workers, messengers, guards, technicians,

9

NYC AGENCY RENOVATION & REHAB CITY OWNED
BUILDINGS/STRUCTURES PLA

non-manual employees, and all professional, engineering, administrative and management persons;

B.      Employees of the Agency, New York City, or any other municipal or State agency, authority or entity, or employees of any other public employer, even though working on the Program site while covered Program Work is underway;

C.      Employees and entities engaged in off-site manufacture, modifications, repair, maintenance, assembly, painting, handling or fabrication of project components, materials, equipment or machinery or involved in deliveries to and from the Program site, except to the extent they are lawfully included in the bargaining unit of a Schedule A agreement;

D.      Employees of the Construction Manager (except that in the event the Agency engages a Contractor to serve as Construction Manager, then those employees of the Construction Manager performing manual, on site construction labor will be covered by this Agreement);

E.      Employees engaged in on-site equipment warranty work unless employees are already working on the site and are certified to perform warranty work;

F.      Employees engaged in geophysical testing other than boring for core samples;

G.      Employees engaged in laboratory, specialty testing, or inspections, pursuant to a professional services agreement between the Agency, or any of the Agency's

10

NYC AGENCY RENOVATION & REHAB CITY OWNED
BUILDINGS/STRUCTURES PLA

other professional consultants, and such laboratory, testing, inspection or surveying firm;
and

      H.    Employees engaged in on-site maintenance of installed equipment
or systems which maintenance is awarded as part of a contract that includes Program Work
but which maintenance occurs after installation of such equipment or system and is not
directly related to construction services.

### SECTION 4. NON-APPLICATION TO CERTAIN ENTITIES

      This Agreement shall not apply to those parents, affiliates, subsidiaries, or
other joint or sole ventures of any Contractor which do not perform Program Work. It is
agreed that this Agreement does not have the effect of creating any joint employment,
single employer or alter ego status among the Agency (including in its capacity as
Construction Manager) or any Contractor. The Agreement shall further not apply to any
New York City or other municipal or State agency, authority, or entity other than a listed
Agency and nothing contained herein shall be construed to prohibit or restrict the Agency
or its employees, or any State, New York City or other municipal or State authority, agency
or entity and its employees, from performing on or off-site work related to Program Work.

      As the contracts involving Program Work are completed and accepted, the
Agreement shall not have further force or effect on such items or areas except where
inspections, additions, repairs, modifications, check-out and/or warranty work are assigned
in writing (copy to Local Union involved) by the Agency (or Construction Manager) for
performance under the terms of this Agreement.

Execution Copy 2015-2018

NYC AGENCY RENOVATION & REHAB CITY OWNED
BUILDINGS/STRUCTURES PLA

### ARTICLE 4- UNION RECOGNITION AND EMPLOYMENT

#### SECTION 1. PRE-HIRE RECOGNITION

The Contractors recognize the signatory Unions as the sole and exclusive bargaining representatives of all employees who are performing on-site Program Work, with respect to that work.

#### SECTION 2. UNION REFERRAL

A.    The Contractors agree to employ and hire craft employees for Program Work covered by this Agreement through the job referral systems and hiring halls established in the Local Unions' area collective bargaining agreements.  Notwithstanding this, Contractors shall have sole right to determine the competency of all referrals; to determine the number of employees required; to select employees for layoff (subject to Article 5, Section 3); and the sole right to reject any applicant referred by a Local Union, subject to the show-up payments. In the event that a Local Union is unable to fill any request for qualified employees within a 48 hour period after such requisition is made by a Contractor (Saturdays, Sundays and holidays excepted), a Contractor may employ qualified applicants from any other available source. In the event that the Local Union does not have a job referral system, the Contractor shall give the Local Union first preference to refer applicants, subject to the other provisions of this Article. The Contractor shall notify the Local Union of craft employees hired for Program Work within its jurisdiction from any source other than referral by the Union.

12

NYC AGENCY RENOVATION & REHAB CITY OWNED
BUILDINGS/STRUCTURES PLA

B. A Contractor may request by name, and the Local will honor, referral of persons who have applied to the Local for Program Work and who meet the following qualifications:

(1) possess any license required by New York State law for the Program Work to be performed;

(2) have worked a total of at least 1000 hours in the Construction field during the prior 3 years; and

(3) were on the Contractor's active payroll for at least 60 out of the 180 calendar days prior to the contract award.

No more than twelve per centum (12%) of the employees covered by this Agreement, per Contractor by craft, shall be hired through the special provisions above. Under this provision, name referrals begin with the eighth employee needed and continue on that same basis.

C. Notwithstanding Section 2(B), above, certified MWBE contractors for which participation goals are set forth in New York City Administrative Code §6-129, that are not signatory to any Schedule A CBAs, with contracts valued at or under five hundred thousand ($500,000), may request by name, and the Local will honor, referral of the second (2nd), fourth (4th), sixth (6th), and eighth (8th) employee, who have applied to the Local for Program Work and who meet the following qualifications:

(1) possess any license required by New York State law for the Program Work to be performed;

(2) have worked a total of at least 1000 hours in the Construction field during the prior 3 years; and

(3) were on the Contractor's active payroll for at least 60 out of the 180 work days prior to the contract award.

13

Execution Copy 2015-2018

NYC AGENCY RENOVATION & REHAB CITY OWNED
BUILDINGS/STRUCTURES PLA

For such contracts valued at above $500,000 but less than $1 million, the Local will honor referrals by name of the second (2nd), fifth (5th), and eighth (8th) employee subject to the foregoing requirements. In both cases, name referrals will thereafter be in accordance with Section 2(B), above.

D.       Where a certified MWBE Contractor voluntarily enters into a Collective Bargaining Agreement ("CBA") with a BCTC Union, the employees of such Contractor at the time the CBA is executed shall be allowed to join the Union for the applicable trade subject to satisfying the Union's basic standards of proficiency for admission.

## SECTION 3. NON-DISCRIMINATION IN REFERRALS

The Council represents that each Local Union hiring hall and referral system will be operated in a non-discriminatory manner and in full compliance with all applicable federal, state and local laws and regulations which require equal employment opportunities. Referrals shall not be affected in any way by the rules, regulations, bylaws, constitutional provisions or any other aspects or obligations of union membership, policies or requirements and shall be subject to such other conditions as are established in this Article. No employment applicant shall be discriminated against by any referral system or hiring hall because of the applicant's union membership, or lack thereof.

## SECTION 4: MINORITY, FEMALE, LOCAL AND SECTION 3 REFERRALS

In the event a Local Union either fails, or is unable to refer qualified minority or female applicants in percentages equaling the workforce participation goals adopted by the City and set forth in the Agency's (or, if applicable, Construction Manager's) bid

14

NYC AGENCY RENOVATION & REHAB CITY OWNED
BUILDINGS/STRUCTURES PLA

specifications, within 48 hours of the request for same, the Contractor may employ qualified minority or female applicants from any other available source.

In the event that the City or a City agency determines to adopt local workforce participation goals to be set forth in an Agency's (or, if applicable Construction Manager's) bid specifications, the City and BCTC will work together to seek agreement on appropriate goals to be set forth in applicable bid documents and to be subject to the provisions of this section.

For any Program Work that may become subject to requirements under Section 3 of the Housing and Urban Development Act of 1968, as amended by the Housing and Community Development Act of 1992, and any rules, including new or revised rules, that may be published thereunder, the Local Unions will acknowledge the Section 3 obligations of the Construction Manager or Contractor, as applicable, and agree to negotiate a method to implement this Article in a manner that would allow the Construction Manager or Contractor to meet its Section 3 obligations to the greatest extent feasible, and to post any required notices in the manner required by Section 3. The parties also acknowledge that the Construction Manager and Contractor may also fulfill its Section 3 requirements on Program Work by promoting opportunities for excluded employees, as defined by Article 3, Section 3 of this Agreement, on Program Work and, to the extent permitted by Section 3, by promoting opportunities for craft and other employees on non-Program Work.

## SECTION 5. CROSS AND QUALIFIED REFERRALS

The Local Unions shall not knowingly refer to a Contractor an employee then employed by another Contractor working under this Agreement. The Local Unions

15

NYC AGENCY RENOVATION & REHAB CITY OWNED
BUILDINGS/STRUCTURES PLA

will exert their utmost efforts to recruit sufficient numbers of skilled and qualified crafts

employees to fulfill the requirements of the Contractor.

### SECTION 6. UNION DUES

All employees covered by this Agreement shall be subject to the union

security provisions contained in the applicable Schedule A local agreements, as amended

from time to time, but only for the period of time during which they are performing on-site

Program Work and only to the extent of tendering payment of the applicable union dues

and assessments uniformly required for union membership in the Local Unions which

represent the craft in which the employee is performing Program Work. No employee shall

be discriminated against at any Program Work site because of the employee's union

membership or lack thereof. In the case of unaffiliated employees, the dues payment will

be received by the Local Unions as an agency shop fee.

### SECTION 7. CRAFT FOREPERSONS AND GENERAL FOREPERSONS

The selection of craft forepersons and/or general forepersons and the

number of forepersons required shall be solely the responsibility of the Contractor except

where otherwise provided by specific provisions of an applicable Schedule A, and

provided that all craft forepersons shall be experienced and qualified journeypersons in

their trade as determined by the appropriate Local Union. All forepersons shall take orders

exclusively from the designated Contractor representatives. Craft forepersons shall be

designated as working forepersons at the request of the Contractor, except when an

existing local Collective Bargaining Agreement prohibits a foreperson from working when

the craft persons he is leading exceed a specified number.

16

NYC AGENCY RENOVATION & REHAB CITY OWNED
BUILDINGS/STRUCTURES PLA

**SECTION 8. ON CALL REPAIR REFERRALS**

A.      When an Agency awards a contract that requires the Contractor to have employees available on short notice to make time sensitive repairs with such contract requiring the Contractor to respond within as little as two hours from the time the Contractor is contacted by the Agency ("On Call, Repair Contract"), the Contractor will, within ten (10) days of being awarded an On Call, Repair Contract subject to this Agreement, notify the appropriate affiliated Union that it has been awarded such a contract and immediately enter into good faith negotiations with such relevant affiliated Union to establish a procedure to receive time sensitive referrals from such affiliated Union(s).

B.      In the event the Contractor and the relevant affiliated Union(s) are unable to negotiate a specific, mutually agreeable procedure for on call repair referral procedure within twenty (20) days of commencement of negotiations or prior to commencement of performance of the contract, whichever is earlier, the Contractor and the relevant affiliated Unions will follow the following procedure:

1.      Upon notification by a Contractor that it has been awarded an On Call Repair Contract pursuant to paragraph A above, each relevant affiliate Union shall provide the Contractor with the name and twenty four (24) hour contact information of an On Call, Repair Contract contact person for urgent on call repair referrals.

2.      The relevant affiliated Unions shall prepare a list of individuals eligible and prepared for referral on an immediate basis to respond to the on call repair contractor. Such list shall be provided to and in the possession of the designated on call repair contact person for the affiliated Union and available for immediate reference.

17

NYC AGENCY RENOVATION & REHAB CITY OWNED
BUILDINGS/STRUCTURES PLA

3.    Individuals on such list must be able to comply with the Contractor's response time pursuant to contract requirements.

4.    The Union's On Call, Repair Contract contact person shall respond to a contractor's request for referrals within a reasonable time of the request so that compliance with the contract shall be possible.

C.    In the event that the Contractor makes a request for an on call referral that is compliant with this procedure and a Union is not able to respond to the request, that Union will be deemed to have waived the forty-eight (48) hour referral rule contained in Section 2 above and the Contractor may employ qualified applicants from any other available source that can meet contract requirements for that time sensitive on call repair work only; provided, however, that any work related to the repair work that is not of a time sensitive nature under the contract shall comply with Section 2. If a Union fails to timely refer a worker and the Contractor employs other workers, the Contractor will e-mail the agency within 72 hours and the agency will forward that e-mail to the designated Labor Management Committee contacts.

## ARTICLE 5- UNION REPRESENTATION

### SECTION 1. LOCAL UNION REPRESENTATIVE

Each Local Union representing on-site employees shall be entitled to designate in writing (copy to Contractor involved and Construction Manager) one representative, and/or the Business Manager, who shall be afforded access to the Program Work site during such time as bargaining unit work is occurring and subject to otherwise applicable policies pertaining to visitors to the site.

18

NYC AGENCY RENOVATION & REHAB CITY OWNED
BUILDINGS/STRUCTURES PLA

### SECTION 2. STEWARDS

A.      Each Affiliated Union shall have the sole discretion to designate any journey person as a Steward and an alternate Steward.  The Union shall notify the Owner and/or Construction Manager as well as the Contractor of the identity of the designated Steward (and alternate) prior to the assumption of such duties. Stewards shall not exercise supervisory functions and will receive the regular rate of pay for their craft classifications. All Stewards shall be working Stewards.

B.      In addition to their work as an employee, the Steward shall have the right to receive complaints or grievances and to discuss and assist in their adjustment with the Contractor's appropriate supervisor. Each Steward shall be concerned with the employees of the Steward's trade and, if applicable, subcontractors of their Contractor, but not with the employees of any other trade Contractor. No Contractor shall discriminate against the Steward in the proper performance of Union duties.

C.      The Stewards shall not have the right to determine when overtime shall be worked, or who shall work overtime except pursuant to a Schedule A provision providing procedures for the equitable distribution of overtime.

### SECTION 3. LAYOFF OF A STEWARD

Contractors agree to notify the appropriate Union 24 hours prior to the layoff of a Steward, except in cases of discipline or discharge for just cause. If a Steward is protected against layoff by a Schedule A provision, such provision shall be recognized to the extent the Steward possesses the necessary qualifications to perform the work required.

19

NYC AGENCY RENOVATION & REHAB CITY OWNED
BUILDINGS/STRUCTURES PLA

In any case in which a Steward is discharged or disciplined for just cause, the Local Union involved shall be notified immediately by the Contractor.

### ARTICLE 6- MANAGEMENT'S RIGHTS

### SECTION 1. RESERVATION OF RIGHTS

Except as expressly limited by a specific provision of this Agreement, Contractors retain full and exclusive authority for the management of their operations including, but not limited to, the right to: direct the work force, including determination as to the number of employees to be hired and the qualifications therefore; the promotion, transfer, layoff of its employees; require compliance with the directives of the Agency including standard restrictions related to security and access to the site that are equally applicable to Agency employees, guests, or vendors; or the discipline or discharge for just cause of its employees; assign and schedule work; promulgate reasonable Program Work rules that are not inconsistent with this Agreement or rules common in the industry and are reasonably related to the nature of work; and, the requirement, timing and number of employees to be utilized for overtime work. No rules, customs, or practices which limit or restrict productivity or efficiency of the individual, as determined by the Contractor, Agency and/or Construction Manager and/or joint working efforts with other employees shall be permitted or observed.

### SECTION 2. MATERIALS, METHODS & EQUIPMENT

There shall be no limitation or restriction upon the Contractor's choice of materials, techniques, methods, technology or design, or, regardless of source or location, upon the use and installation of equipment, machinery, package units, pre-cast,

20

Execution Copy 2015-2018

NYC AGENCY RENOVATION & REHAB CITY OWNED
BUILDINGS/STRUCTURES PLA

pre-fabricated, pre-finished, or pre-assembled materials or products, tools, or other labor-saving devices. Contractors may, without restriction, install or use materials, supplies or equipment regardless of their source; provided, however, that where there is a Schedule "A" that includes a lawful union standards and practices clauses, then such clause as set forth in Schedule A Agreements will be complied with, unless there is a lawful Agency specification (or specification issued by a Construction Manager which would be lawful if issued by the Agency directly) that would specifically limit or restrict the Contractor's choice of materials, techniques, methods, technology or design, or, regardless of source or location, upon the use and installation of equipment, machinery, package units, pre-cast, pre-fabricated, pre-finished, or pre-assembled materials or products, tools, or other labor-saving devices, and which would prevent compliance with such Schedule A clause. The on-site installation or application of such items shall be performed by the craft having jurisdiction over such work; provided, however, it is recognized that other personnel having special qualifications may participate, in a supervisory capacity, in the installation, check-off or testing of specialized or unusual equipment or facilities as designated by the Contractor. There shall be no restrictions as to work which is performed off-site for Program Work.

## ARTICLE 7- WORK STOPPAGES AND LOCKOUTS

### SECTION 1. NO STRIKES-NO LOCK OUT

There shall be no strikes, sympathy strikes, picketing, work stoppages, slowdowns, hand billing, demonstrations or other disruptive activity at the Program Work site for any reason by any Union or employee against any Contractor or employer. There

21

NYC AGENCY RENOVATION & REHAB CITY OWNED
BUILDINGS/STRUCTURES PLA

shall be no other Union, or concerted or employee activity which disrupts or interferes with

the operation of the Program Work or the objectives of the Agency at any Program Work

site. In addition, failure of any Union or employee to cross any picket line established by

any Union, signatory or non-signatory to this Agreement, or the picket or demonstration

line of any other organization, at or in proximity to a Program Work site where the failure

to cross disrupts or interferes with the operation of Program Work is a violation of this

Article. Should any employees breach this provision, the Unions will use their best efforts

to try to immediately end that breach and return all employees to work. There shall be no

lockout at a Program Work site by any signatory Contractor, Agency or Construction

Manager.

### SECTION 2. DISCHARGE FOR VIOLATION

A Contractor may discharge any employee violating Section 1, above, and

any such employee will not be eligible thereafter for referral under this Agreement for a

period of 100 days.

### SECTION 3. NOTIFICATION

If a Contractor contends that any Union has violated this Article, it will

notify the Local Union involved advising of such fact, with copies of the notification to the

Council. The Local Union shall instruct and order, the Council shall request, and each shall

otherwise use their best efforts to cause, the employees (and where necessary the Council

shall use its best efforts to cause the Local Union), to immediately cease and desist from

any violation of this Article. If the Council complies with these obligations it shall not be

liable for the unauthorized acts of a Local Union or its members. Similarly, a Local Union

22

NYC AGENCY RENOVATION & REHAB CITY OWNED
BUILDINGS/STRUCTURES PLA

and its members will not be liable for any unauthorized acts of the Council. Failure of a

Contractor or the Construction Manager to give any notification set forth in this Article

shall not excuse any violation of Section 1 of this Article.

### SECTION 4. EXPEDITED ARBITRATION

Any Contractor or Union alleging a violation of Section 1 of this Article

may utilize the expedited procedure set forth below (in lieu of, or in addition to, any actions

at law or equity) that may be brought.

A.      A party invoking this procedure shall notify J.J. Pierson or Richard

Adelman; who shall alternate (beginning with Arbitrator J.J. Pierson) as Arbitrator under

this expedited arbitration procedure. If the Arbitrator next on the list is not available to hear

the matter within 24 hours of notice, the next Arbitrator on the list shall be called. Copies of

such notification will be simultaneously sent to the alleged violator and Council.

B.      The Arbitrator shall thereupon, after notice as to time and place to

the Contractor, the Local Union involved, the Council and the Construction Manager, hold

a hearing within 48 hours of receipt of the notice invoking the procedure if it is contended

that the violation still exists. The hearing will not, however, be scheduled for less than 24

hours after the notice required by Section 3, above.

C.      All notices pursuant to this Article may be provided by telephone,

telegraph, hand delivery, or fax, confirmed by overnight delivery, to the Arbitrator,

Contractor, Construction Manager and Local Union involved. The hearing may be held on

any day including Saturdays or Sundays. The hearing shall be completed in one session,

which shall not exceed 8 hours duration (no more than 4 hours being allowed to either side

23

NYC AGENCY RENOVATION & REHAB CITY OWNED
BUILDINGS/STRUCTURES PLA

to present their case, and conduct their cross examination) unless otherwise agreed. A failure of any Union or Contractor to attend the hearing shall not delay the hearing of evidence by those present or the issuance of an award by the Arbitrator.

        D.     The sole issue at the hearing shall be whether a violation of Section 1, above, occurred. If a violation is found to have occurred, the Arbitrator shall issue a Cease and Desist Award restraining such violation and serve copies on the Contractor and Union involved. The Arbitrator shall have no authority to consider any matter in justification, explanation or mitigation of such violation or to award damages (any damages issue is reserved solely for court proceedings, if any.) The Award shall be issued in writing within 3 hours after the close of the hearing, and may be issued without an Opinion. If any involved party desires an Opinion, one shall be issued within 15 calendar days, but its issuance shall not delay compliance with, or enforcement of, the Award.

        E.     The Agency and Construction Manager (or such other designee of the Agency) may participate in full in all proceedings under this Article.

        F.     An Award issued under this procedure may be enforced by any court of competent jurisdiction upon the filing of this Agreement together with the Award. Notice of the filing of such enforcement proceedings shall be given to the Union or Contractor involved, and the Construction Manager.

        G.     Any rights created by statute or law governing arbitration proceedings which are inconsistent with the procedure set forth in this Article, or which interfere with compliance thereto, are hereby waived by the Contractors and Unions to whom they accrue.

24

NYC AGENCY RENOVATION & REHAB CITY OWNED
BUILDINGS/STRUCTURES PLA

H.      The fees and expenses of the Arbitrator shall be equally divided
between the involved Contractor and Union.

### SECTION 5. ARBITRATION OF DISCHARGES FOR VIOLATION

Procedures contained in Article 9 shall not be applicable to any alleged
violation of this Article, with the single exception that an employee discharged for
violation of Section 1, above, may have recourse to the procedures of Article 9 to
determine only if the employee did, in fact, violate the provisions of Section 1 of this
Article; but not for the purpose of modifying the discipline imposed where a violation is
found to have occurred.

### ARTICLE 8 - LABOR MANAGEMENT COMMITTEE

### SECTION 1. SUBJECTS

The Program Labor Management Committee will meet on a regular basis
to: 1) promote harmonious relations among the Contractors and Unions; 2) enhance safety
awareness, cost effectiveness and productivity of construction operations; 3) protect the
public interests; 4) discuss matters relating to staffing and scheduling with safety and
productivity as considerations; and 5) review efforts to meet applicable participation goals
for MWBEs and workforce participation goals for minority and female employees.

### SECTION 2. COMPOSITION

The Committee shall be jointly chaired by a designee of the Agency and the
President of the Council. It may include representatives of the Local Unions and
Contractors involved in the issues being discussed.   The parties may mutually designate an

25

NYC AGENCY RENOVATION & REHAB CITY OWNED
BUILDINGS/STRUCTURES PLA

MWBE representative to participate in appropriate Committee discussions. The Committee may conduct business through mutually agreed upon sub-committees.

## ARTICLE 9- GRIEVANCE & ARBITRATION PROCEDURE

### SECTION 1. PROCEDURE FOR RESOLUTION OF GRIEVANCES

Any question, dispute or claim arising out of, or involving the interpretation or application of this Agreement (other than jurisdictional disputes or alleged violations of Article 7, Section 1) shall be considered a grievance and shall be resolved pursuant to the exclusive procedure of the steps described below, provided, in all cases, that the question, dispute or claim arose during the term of this Agreement. Grievances shall include the City contract number and the Program Work address; such information is posted at the Program Work Site if already commenced, and is available in the City Record and Notice to Proceed for projects not already commenced.

Grievances as to whether a scope of work is included or excluded from this Agreement shall be submitted to the Labor Management Committee (LMC) in the first instance rather than Step 1 below. To be timely, such notice must be given no later than ten days prior to a bid opening if the grievance is challenging a determination by an Agency that the contract is not subject to this Agreement. For other grievances as to contractor scope of work issues, notice of such challenges shall be submitted to the LMC within 7 calendar days after the act, occurrence or event giving rise to the grievance. If the scope of work grievance is not resolved within 21 days of its submission to the LMC, then the grievance may proceed directly to Step 3 below.

**Step 1:**

26

NYC AGENCY RENOVATION & REHAB CITY OWNED
BUILDINGS/STRUCTURES PLA

(a)    When any employee covered by this Agreement feels aggrieved by a claimed violation of this Agreement, the employee shall, through the Local Union business representative or job steward give notice of the claimed violation to the work site representative of the involved Contractor and the Construction Manager. To be timely, such notice of the grievance must be given within 7 calendar days after the act, occurrence or event giving rise to the grievance. The business representative of the Local Union or the job steward and the work site representative of the involved Contractor shall meet and endeavor to adjust the matter within 7 calendar days after timely notice has been given. If they fail to resolve the matter within the prescribed period, the grieving party, may, within 7 calendar days thereafter, pursue Step 2 of the grievance procedure by serving the involved Contractor with written copies of the grievance setting forth a description of the claimed violation, the date on which the grievance occurred, and the provisions of the Agreement alleged to have been violated. Grievances and disputes settled at Step 1 are non-precedential except as to the specific Local Union, employee and Contractor directly involved unless the settlement is accepted in writing by the Construction Manager (or designee) as creating a precedent.

(b)    Should any signatory to this Agreement have a dispute (excepting jurisdictional disputes or alleged violations of Article 7, Section 1) with any other signatory to this Agreement and, if after conferring, a settlement is not reached within 7 calendar days, the dispute shall be reduced to writing and proceed to Step 2 in the same manner as outlined in subparagraph (a) for the adjustment of employee grievances.

Step 2:

27

NYC AGENCY RENOVATION & REHAB CITY OWNED
BUILDINGS/STRUCTURES PLA

A Step 2 grievance shall be filed with the Agency, the BCTC, the

Contractor, and, if the grievance is against a subcontractor, the subcontractor. The

Business Manager or designee of the involved Local Union, together with representatives

of the involved Contractor, Council, the Construction Manager (or designee), and, if the

grievance is against a subcontractor, the subcontractor, shall meet in Step 2 within 7

calendar days of service of the written grievance to arrive at a satisfactory settlement. The

BCTC shall schedule the Step 2 meeting.

**Step 3:**

(a) If the grievance shall have been submitted but not resolved in Step 2, any

of the participating Step 2 entities may, within 21 calendar days after the initial Step 2

meeting, submit the grievance in writing (copies to other participants, including the

Construction Manager or designee) to the BCTC. In the event the matter is not resolved at

Step 2, either J.J. Pierson or Richard Adelman, who shall act, alternately (beginning with

Arbitrator J.J. Pierson), as the Arbitrator under this procedure, shall be designated at the

Step 2 hearing and the BCTC will notify the arbitrator of his designation.   After such

notification by the BCTC, the local demanding arbitration shall within a reasonable time

request the arbitrator to schedule the matter for an arbitration hearing date. The Labor

Arbitration Rules of the American Arbitration Association shall govern the conduct of the

arbitration hearing, at which all Step 2 participants shall be parties. The decision of the

Arbitrator shall be final and binding on the involved Contractor, Local Union and

employees and the fees and expenses of such arbitrations shall be borne equally by the

involved Contractor and Local Union.

28

NYC AGENCY RENOVATION & REHAB CITY OWNED
BUILDINGS/STRUCTURES PLA

(b) Failure of the grieving party to adhere to the time limits set forth in this Article shall render the grievance null and void. These time limits may be extended only by written consent of the Construction Manager (or designee), involved Contractor and involved Local Union at the particular step where the extension is agreed upon. The Arbitrator shall have authority to make decisions only on the issues presented to him and shall not have the authority to change, add to, delete or modify any provision of this Agreement.

### SECTION 2. LIMITATION AS TO RETROACTIVITY

No arbitration decision or award, with the exception of those related to compliance with requirements to pay prevailing wages and supplements in accordance with federal or State law, may provide retroactivity of any kind exceeding 60 calendar days prior to the date of service of the written grievance on the Construction Manager and the involved Contractor or Local Union.

### SECTION 3. PARTICIPATION BY AGENCY AND/OR CONSTRUCTION MANAGER

The Agency and Construction Manager (or such other designee of the Agency) shall be notified by the involved Contractor of all actions at Steps 2 and 3 and, at its election, may participate in full in all proceedings at these Steps, including Step 3 arbitration.

29

NYC AGENCY RENOVATION & REHAB CITY OWNED
BUILDINGS/STRUCTURES PLA

### ARTICLE 10 – JURISDICTIONAL DISPUTES

#### SECTION 1. NO DISRUPTIONS

There will be no strikes, sympathy strikes, work stoppages, slowdowns, picketing or other disruptive activity of any kind arising out of any jurisdictional dispute. Pending the resolution of the dispute, the work shall continue uninterrupted and as assigned by the Contractor. No jurisdictional dispute shall excuse a violation of Article 7.

#### SECTION 2. ASSIGNMENT

All Program Work assignments shall be made by the Contractor to unions affiliated with the BCTC consistent with the New York Plan for the Settlement of Jurisdictional Disputes ("New York Plan") and its Greenbook decisions, if any. Where there are no applicable Greenbook decisions, assignments shall be made in accordance with the provisions of the New York Plan and local industry practice.

#### SECTION 3. NO INTERFERENCE WITH WORK

There shall be no interference or interruption of any kind with the Program Work while any jurisdictional dispute is being resolved. The work shall proceed as assigned by the Contractor until finally resolved under the applicable procedure of this Article. The award shall be confirmed in writing to the involved parties. There shall be no strike, work stoppage or interruption in protest of any such award.

30

NYC AGENCY RENOVATION & REHAB CITY OWNED
BUILDINGS/STRUCTURES PLA

## ARTICLE 11 – WAGES AND BENEFITS

### SECTION 1. CLASSIFICATION AND BASE HOURLY RATE

All employees covered by this Agreement shall be classified in accordance with the work performed and paid the hourly wage rates applicable for those classifications as required by the applicable prevailing wage laws.

### SECTION 2. EMPLOYEE BENEFITS

A.    The Contractors agree to pay on a timely basis contributions on behalf of all employees covered by this Agreement to those established jointly trusteed employee benefit funds designated in the applicable Collective Bargaining Agreements in Schedule A (in the appropriate Schedule A amounts), provided that such benefits are required to be paid on public works under any applicable prevailing wage law. Bona fide jointly trusteed fringe benefit plans established or negotiated through collective bargaining during the life of this Agreement may be added if similarly required under applicable prevailing wage law. Contractors, not otherwise contractually bound to do so, shall not be required to contribute to benefits, trusts or plans of any kind which are not required by the prevailing wage law provided, however, that this provision does not relieve Contractors signatory to local collective bargaining agreement with any affiliated union from complying with the fringe benefit requirements for all funds contained in the CBA.

B.    1.    Notwithstanding Section 2 (A) above, and subject to 2 (B)(2) below, Contractors who designate employees pursuant to Article 4, Section 2 (B) and (C) ("core" employees) that are not signatory to a Schedule A Agreement and who maintain bona fide private benefit plans that satisfy the requirements of Section 220 of the Labor Law, may

31

NYC AGENCY RENOVATION & REHAB CITY OWNED
BUILDINGS/STRUCTURES PLA

satisfy the above benefit obligation with respect to those employees by providing those employees with coverage under their private benefit plans (to the extent consistent with Section 220). The total benefit payments to be made on behalf of each such employee must be equal to the total Section 220 supplement amount and any shortfall must be paid by cash supplement to the employee.

2.      A contractor that will satisfy its Section 220 obligations in accordance with subsection 2(B)(1) above shall make available to the Agency at the time of contract award a complete set of plan documents for each non-Schedule A benefit plan into which contributions will be made and/or coverage provided pursuant to the provisions of Section 2(B)(l) above. The Contractor shall also provide certification from a certified public accountant as to the annualized hourly value of such benefits consistent with the requirements of Section 220.

3.      The City shall verify that the alternate benefit plan(s), together with any cash supplement to the employee, is compliant with Section 220 prior to awarding the Contractor a contract covered by this Agreement. In the event the Contractor's alternate benefit plan(s), together with any cash supplement to the employee, is determined to be compliant with Section 220 and will be utilized by the Contractor on behalf of Article 4, Section 2(B) and (C) core employees, the Local Unions have no duty to enforce the Contractor's obligations on the alternate benefit plan(s) as they are not party to the alternate plan(s) or privy to the terms and conditions of the plan obligations. In the event the City determines the alternate benefit plan(s), together with any cash supplement to the employee, is not compliant with Section 220, the Contractor may, upon executing a Letter

32

NYC AGENCY RENOVATION & REHAB CITY OWNED
BUILDINGS/STRUCTURES PLA

of Assent, satisfy its obligations for all employees, including core employees, by
contributing to the Schedule A benefit plans in accordance with the terms of the Schedule
A Agreements.

C.   The Contractors agree to be bound by the written terms of the legally
established jointly trusteed Trust Agreements specifying the detailed basis on which
payments are to be paid into, and benefits paid out of, such Trust Funds but only with
regard to Program Work done under this Agreement and only for those employees to
whom this Agreement requires such benefit payments.

D.   1.  To the extent consistent with New York City's Procurement
Policy Board Rules with respect to prompt payment, as published at www.nyc.gov/ppb,
§4-06(e), and in consideration of the unions' waiver of their rights to withhold labor from
a contractor or subcontractor delinquent in the payment of fringe benefits contributions
("Delinquent Contractor"); the Agency agrees that where any such union and/or fringe
benefit fund shall notify the Agency, the General Contractor, and the Delinquent
Contractor in writing with back-up documentation that the Delinquent Contractor has
failed to make fringe benefit contributions to it as provided herein and the Delinquent
Contractor shall fail, within ten (10) calendar days after receipt of such notice, to furnish
either proof of such payment or notice that the amount claimed by the union and/or fringe
benefit fund is in dispute, the Agency shall withhold from amounts then or thereafter
becoming due and payable to the General Contractor an amount equal to that portion of
such payment due to the General Contractor that relates solely to the work performed by

33

Execution Copy 2015-2018

NYC AGENCY RENOVATION & REHAB CITY OWNED
BUILDINGS/STRUCTURES PLA

the Delinquent Contractor which the union or fringe benefit fund claims to be due it, and
shall remit the amount when and so withheld to the fringe benefit fund and deduct such
payment from the amounts then otherwise due and payable to the General Contractor,
which payment shall, as between the General Contractor and the Agency, be deemed a
payment by the Agency to the General Contractor; provided however, that in any month,
such withholding shall not exceed the amount contained in the General Contractor's
monthly invoice for work performed by the Delinquent Contractor.  The union or its
employee benefit funds shall include in its notification of delinquent payment of fringe
benefits only such amount it asserts the Delinquent Contractor failed to pay on the specific
project against which the claim is made and the union or its employee benefit funds may
not include in such notification any amount such Delinquent Contractor may have failed to
pay on any other City or non-City project.

2.    In addition, where a union or employee benefit fund gives notice to the
City that a Contractor is Delinquent as defined in subsection 2(D)(1) above and the City
determines that the notice includes appropriate back-up documentation that the Contractor
is delinquent, the City will promptly, but not later than twenty (20) days after receipt of the
notice, provide a copy of said notice to City Agencies.   In the event the City determines
there is insufficient back-up documentation, it will notify the appropriate union and/or
fringe benefit fund promptly, but not later than twenty (20) days after receipt of the
Delinquency Notice, and shall include notice of what additional documentation is
requested.  Any determination by the City that there is insufficient back-up must be
reasonable.  This provision is intended to enhance compliance with the prevailing wage

34

FILED: NEW YORK COUNTY CLERK 03/12/2018 01:32 PM
NYSCEF DOC. NO. Case 1:18-cv-02313-GHW Document 1-1 Filed 03/15/18 Page 59 of 86

INDEX NO. 450415/2018

RECEIVED NYSCEF: 03/12/2018

NYC AGENCY RENOVATION & REHAB CITY OWNED
BUILDINGS/STRUCTURES PLA

law and the PLA with respect to the payment of fringe benefits, and is not intended as a substitute for the resolution of a disputed claim pursuant to any applicable law or agreement.

The City and the relevant Agency(s) will thereafter require the Delinquent Contractor to provide cancelled checks or other equivalent proof of payment of benefit contributions that have come due, to be submitted with certified payroll reports for all Program Work covered by this Agreement on which the Delinquent Contractor is engaged, for at least a one-year period or such earlier period if the Contractor is ultimately determined not be a Delinquent Contractor. Such proof of payment when required is a condition of payment of the Delinquent Contractor's invoices by any entity, including, but not limited to, the City, the relevant Agency(s), Construction Manager, General Contractor, the prime or higher level subcontractor, as is appropriate under the Delinquent Contractor's engagement. The union and the funds shall upon request receive copies of the certified payrolls, cancelled checks, or other proof of payment from the City and/or the relevant Agency(s).

E.      In the event the General Contractor or Delinquent Contractor shall notify the Agency as above provided that the claim of the union or fringe benefit fund is in dispute, the Agency shall withhold from amounts then or thereafter becoming due and payable to the General Contractor an amount equal to that portion of such payment due to the General Contractor that relates solely to the work performed by the Delinquent Contractor that the union and/or fringe benefit fund claims to be due it, pending resolution of the dispute pursuant to the union's Schedule A agreement, and the amount shall be paid to the party or parties ultimately determined to be entitled thereto, or held until the

35

NYC AGENCY RENOVATION & REHAB CITY OWNED
BUILDINGS/STRUCTURES PLA

Delinquent Contractor and union or employee benefit fund shall otherwise agree as to the disposition thereof; provided however, that such withholding shall not exceed the amount contained in the General Contractor's monthly invoice for work performed by the Delinquent Contractor. In the event the Agency shall be required to withhold amounts from a General Contractor for the benefit of more than one fringe benefit fund, the amounts so withheld in the manner and amount prescribed above shall be applied to or for such fund in the order in which the written notices of nonpayment have been received by the Agency, and if more than one such notice was received on the same day, proportionately based upon the amount of the union and/or fringe benefit fund claims received on such day. Nothing herein contained shall prevent the Agency from commencing an interpleader action to determine entitlement to a disputed payment in accordance with section one thousand six of the civil practice law and rules or any successor provision thereto.

F.     Payment to a fringe benefit fund under this provision shall not relieve the General Contractor or Delinquent Contractor from responsibility for the work covered by the payment. Except as otherwise provided, nothing contained herein shall create any obligation on the part of the Agency to pay any union or fringe benefit fund, nor shall anything provided herein serve to create any relationship in contract or otherwise, implied or expressed, between the union/fund and/or fringe benefit and the Agency.

Execution Copy 2015-2018

NYC AGENCY RENOVATION & REHAB CITY OWNED
BUILDINGS/STRUCTURES PLA

**ARTICLE 12- HOURS OF WORK, PREMIUM PAYMENTS,**

**SHIFTS AND HOLIDAYS**

**SECTION 1. WORK WEEK AND WORK DAY**

A.     The standard work week shall consist of 40 hours of work at straight time rates, Monday through Friday, 8 hours per day, plus ½ hour unpaid lunch period. The standard work week may be reduced to 35 or 37 ½ hours of work at straight time rates, Monday to Friday, 7 or 7 ½ hours per day, plus ½ hour unpaid lunch period in those limited circumstances where the City states in the bid documents that the Contractor will not be given access to the site to accommodate an 8 hour day. The 8 hour, 7 ½ hour or 7 hour work day must be established at the commencement of the project and may not be altered by the Contractor.

B.     In accordance with Program needs, there shall be flexible start times with advance notice from Contractor to the Union. The Day Shift shall commence between the hours of 6:00 a.m. and 9:00 a.m. and shall end between the hours of 2:30 p.m. and 5:30 p.m., for an 8 hour day, and up to 7:30 p.m. for a 10 hour day. The Evening Shift shall commence between the hours of 3:00 p.m. and 6:00 p.m., unless different times are necessitated by the Agency's phasing plans on specific projects. The Night Shift shall commence between the hours of 11:00 p.m. and 2:00 a.m., unless different times are necessitated by the Agency's phasing plans on specific projects. Subject to the foregoing, starting and quitting times shall occur at the Program Work site designated by the Contractor.

Execution Copy 2015-2018

NYC AGENCY RENOVATION & REHAB CITY OWNED
BUILDINGS/STRUCTURES PLA

C.    Scheduling .— Except as provided above, Monday through Friday is the standard work week; 8 hours of work plus ½ hour unpaid lunch. Notwithstanding any other provision of this Agreement, a contractor may schedule a four day work week, 10 hours per day at straight time rates, plus a ½ hour unpaid lunch, at the commencement of the job.

D.    Notice -- Contractors shall provide not less than 5 days prior notice to the Local Union involved as to the work week and work hour schedules to be worked or such lesser notice as may be mutually agreed upon.

### SECTION 2. OVERTIME

Overtime shall be paid for any work (i) over an employee's regularly scheduled work day, i.e., work over eight (8) hours in a day where 5/8s is scheduled, work over ten (10) hours in a day where 4/10s is scheduled, or work over seven (7) or seven and one half (7 ½) hours where such hours are scheduled pursuant to Article 12, section 1(A) and (ii) over forty (40) hours in a week, or over thirty five (35) or thirty seven and one-half (37 ½) where such hours are scheduled pursuant to Article 12, section 1(A). Overtime shall be paid at time and one half (1½) Monday through Saturday. All overtime work performed on Sunday and Holidays will be paid pursuant to the applicable Schedule A. There shall be no stacking or pyramiding of overtime pay under any circumstances. There will be no restriction upon the Contractor's scheduling of overtime or the nondiscriminatory designation of employees who shall be worked, including the use of employees, other than those who have worked the regular or scheduled work week, at straight time rates. The Contractor shall have the right to schedule work so as to minimize

38

NYC AGENCY RENOVATION & REHAB CITY OWNED
BUILDINGS/STRUCTURES PLA

overtime or schedule overtime as to some, but not all, of the crafts and whether or not of a continuous nature.

## SECTION 3. SHIFTS

A.     Flexible Schedules - Scheduling of shift work, including Saturday and Sunday work, shall be within the discretion of the Contractor in order to meet Program Work schedules and existing Program Work conditions including the minimization of interference with the mission of the Agency. It is not necessary to work a day shift in order to schedule a second or third shift, or a second shift in order to schedule a third shift, or to schedule all of the crafts when only certain crafts or employees are needed. Shifts must have prior approval of the Agency or Construction Manager, and must be scheduled with not less than five work days notice to the Local Union or such lesser notice as may be mutually agreed upon.

B.     Second and/or Third Shifts/Saturday and/or Sunday Work - - The second shift shall start between 3 p.m. and 6 p.m. and the third shift shall start between 11 p.m. and 2 a.m., subject to different times necessitated by the Agency phasing plans on specific projects. There shall be no reduction in shift hour work. With respect to second and third shift work there shall be a 5% shift premium. No other premium or other payments for such work shall be required unless such work is in excess of the employee's regularly scheduled work week, i.e., 40 hours in the week or thirty five (35) or thirty seven and one half (37 ½) pursuant to Article 12, section 1(A). All employees within a classification performing Program Work will be paid at the same wage rate regardless of the shift or work scheduled work, subject only to the foregoing provisions.

39

NYC AGENCY RENOVATION & REHAB CITY OWNED
BUILDINGS/STRUCTURES PLA

C.      Flexible Starting Times – Shift starting times will be adjusted by the

Contractor as necessary to fulfill Program Work requirements subject to the notice

requirements of paragraph A.

## SECTION 4. HOLIDAYS

A.      Schedule - There shall be nine (9) recognized holidays on the

Project:

| | |
|---|---|
| New Year's Day | |
| Martin Luther King Day | President's Day |
| Memorial Day | Veteran's Day |
| Labor Day | Thanksgiving Day |
| Independence Day | Christmas Day |

All said holidays shall be observed on the calendar date except those

holidays which occur on Saturday shall be observed on the previous Friday and those that

occur on Sunday shall be observed on the following Monday.

B.      Payment - Regular holiday pay, if any, for work performed on such

a recognized holiday shall be in accordance with the applicable Schedule A.

C.      Exclusivity - No holidays other than those listed in Section 4(A)

above shall be recognized or observed.

## SECTION 5.  SATURDAY MAKE-UP DAYS

When severe weather, power failure, fire or natural disaster or other similar

circumstances beyond the control of the Contractor prevent work from being performed on

40

NYC AGENCY RENOVATION & REHAB CITY OWNED
BUILDINGS/STRUCTURES PLA

a regularly scheduled weekday, the Contractor may schedule a Saturday make-up day and

such time shall be scheduled and paid as if performed on a weekday. Any other Saturday

work shall be paid at time and one-half (1½). The Contractor shall notify the Local Union

on the missed day or as soon thereafter as practicable if such a make-up day is to be

worked.

## SECTION 6. REPORTING PAY

A. Employees who report to the work location pursuant to their regular

schedule and who are not provided with work shall be paid two hours reporting pay at

straight time rates. An employee whose work is terminated early by a Contractor due to

severe weather, power failure, fire or natural disaster of for similar circumstances beyond

the Contractor's control, shall receive pay only for such time as is actually worked. In

other instances in which an employee's work is terminated early (unless provided

otherwise elsewhere in this Agreement), the employee shall be paid for his full shift.

Contractors shall not be permitted to call, text or email or voicemail employees in advance

of their regularly scheduled shift starting time to avoid reporting pay. Notwithstanding the

above, in the event that the National Weather Service issues a weather advisory for the area

in which the work location is situated, and the entire project is shut down as a result of the

Weather Advisory, the contractor shall be permitted to speak to employees no less than

four (4) hours in advance of their shift starting time, unless the Local Union consents to a

shorter notice in writing, to advise them not to report to work due to the National Weather

Service advisory, and employees who are so notified shall not receive two (2) hours

reporting pay if they report to the work location. The contractor shall make every effort to

41

NYC AGENCY RENOVATION & REHAB CITY OWNED
BUILDINGS/STRUCTURES PLA

notify each employee directly and confirm that notification has been received. Voice, text, and email messages left for employees without confirmation of delivery and receipt by employee do not constitute sufficient notice under this provision.

B.     When an employee, who has completed their scheduled shift and left the Program Work site, is "called out" to perform special work of a casual, incidental or irregular nature, the employee shall receive overtime pay at the rate of time and one-half of the employee's straight time rate for hours actually worked.

C.     When an employee leaves the job or work location of their own volition or is discharged for cause or is not working as a result of the Contractor's invocation of Section 7 below, they shall be paid only for the actual time worked.

D.     Except as specifically set forth in this Article there shall be no premiums, bonuses, hazardous duty, high time or other special premium payments or reduction in shift hours of any kind.

E.     There shall be no pay for time not actually worked except as specifically set forth in this Article and except where an applicable Schedule A requires a full weeks' pay for forepersons.

**SECTION 7. PAYMENT OF WAGES**

A.     Termination- Employees who are laid off or discharged for cause shall be paid in full for that which is due them at the time of termination. The Contractor shall also provide the employee with a written statement setting forth the date of lay off or discharge.

42

NYC AGENCY RENOVATION & REHAB CITY OWNED
BUILDINGS/STRUCTURES PLA

### SECTION 8. EMERGENCY WORK SUSPENSION

A Contractor may, if considered necessary for the protection of life and/or safety of employees or others, suspend all or a portion of Program Work. In such instances, employees will be paid for actual time worked, except that when a Contractor requests that employees remain at the job site available for work, employees will be paid for that time at their hourly rate of pay.

### SECTION 9. INJURY/DISABILITY

An employee who, after commencing work, suffers a work-related injury or disability while performing work duties, shall receive no less than a full day's pay in accordance with the employee's regularly scheduled work day under Article 12, section (1)(A). Further, the employee shall be rehired at such time as able to return to duties provided there is still Program Work available for which the employee is qualified and able to perform.

### SECTION 10. TIME KEEPING

A Contractor may utilize brassing or other systems to check employees in and out. Each employee must check in and out. The Contractor will provide adequate facilities for checking in and out in an expeditious manner.

### SECTION 11. MEAL PERIOD

A Contractor shall schedule an unpaid period of not more than 1/2 hour duration at the work location between the 3rd and 5th hour of the scheduled shift. A Contractor may, for efficiency of operation, establish a schedule which coordinates the meal periods of two or more crafts or which provides for staggered lunch periods within a

43

Execution Copy 2015-2018

NYC AGENCY RENOVATION & REHAB CITY OWNED
BUILDINGS/STRUCTURES PLA

craft or trade. If an employee is required to work through the meal period, the employee

shall be compensated in a manner established in the applicable Schedule A.

## SECTION 12. BREAK PERIODS

There will be no rest periods, organized coffee breaks or other non-working

time established during working hours. Individual coffee containers will be permitted at

the employee's work location. Where 4/10s are being worked there shall be a morning and

an afternoon coffee break.

## ARTICLE 13 - APPRENTICES

### SECTION 1. RATIOS

Recognizing the need to maintain continuing supportive programs designed

to develop adequate numbers of competent workers in the construction industry and to

provide craft entry opportunities for minorities, women and economically disadvantaged

non-minority males, Contractors will employ apprentices in their respective crafts to

perform such work as is within their capabilities and which is customarily performed by

the craft in which they are indentured. Contractors may utilize apprentices and such other

appropriate classifications in the maximum ratio permitted by the New York State

Department of Labor or the maximum allowed per trade. Apprentices and such other

classifications as are appropriate shall be employed in a manner consistent with the

provisions of the appropriate Schedule A. The parties encourage, as an appropriate source

of apprentice recruitment consistent with the rules and operations of the affiliated unions'

apprentice-programs, the use of the Edward J. Malloy Initiative for Construction Skills,

Non-Traditional Employment for Women and Helmets to Hardhats.

Execution Copy 2015-2018

NYC AGENCY RENOVATION & REHAB CITY OWNED
BUILDINGS/STRUCTURES PLA

## ARTICLE 14-SAFETY PROTECTION OF PERSON AND PROPERTY

### SECTION 1. SAFETY REQUIREMENTS

Each Contractor will ensure that applicable OSHA and safety requirements are at all times maintained on the Program Work site and the employees and Unions agree to cooperate fully with these efforts to the extent consistent with their rights and obligations under the law. Employees will cooperate with employer safety policies and will perform their work at all times in a safe manner and protect themselves and the property of the Contractor and Agency from injury or harm, to the extent consistent with their rights and obligations under the law. Failure to do so will be grounds for discipline, including discharge.

### SECTION 2. CONTRACTOR RULES

Employees covered by this Agreement shall at all times be bound by the reasonable safety, security, and visitor rules as established by the Contractors and the Construction Manager for this Program Work. Such rules will be published and posted in conspicuous places throughout the Program Work sites. Any site security and access policies established by the Construction Manager or General Contractor intended for specific application to the construction workforce for Program Work and that are not established pursuant to an Agency directive shall be implemented only after notice to the BCTC and its affiliates and an opportunity for negotiation and resolution by the Labor Management Committee.

45

NYC AGENCY RENOVATION & REHAB CITY OWNED
BUILDINGS/STRUCTURES PLA

## SECTION 3. INSPECTIONS

The Contractors and Construction Manager retain the right to inspect incoming shipments of equipment, apparatus, machinery and construction materials of every kind.

## ARTICLE 15 - TEMPORARY SERVICES

Temporary services, i.e. all temporary heat, climate control, water, power and light, shall only be required upon the determination of the Agency or Construction Manager, and when used shall be staffed and assigned to the appropriate trade(s) with jurisdiction. Temporary services shall be provided by the appropriate Contractors' existing employees during working hours in which a shift is scheduled for employees of this Contractor. The Agency or Construction Manager may determine the need for temporary services requirements during non-working hours, and when used shall be staffed and assigned to the appropriate trades(s). There shall be no stacking of trades on temporary services, provided this does not constitute a waiver of primary trade jurisdiction. In the event a temporary system component is claimed by multiple trades, the matter shall be resolved through the New York Plan for Jurisdictional Disputes.

## ARTICLE 16 - NO DISCRIMINATION

## SECTION 1. COOPERATIVE EFFORTS

The Contractors and Unions agree that they will not discriminate against any employee or applicant for employment because of creed, race, color, religion, sex, sexual orientation, national origin, marital status, citizenship status, disability, age or any other status provided by law, in any manner prohibited by law or regulation.

46

NYC AGENCY RENOVATION & REHAB CITY OWNED
BUILDINGS/STRUCTURES PLA

## SECTION 2. LANGUAGE OF AGREEMENT

The use of the masculine or feminine gender in this Agreement shall be construed as including both genders.

## ARTICLE 17- GENERAL TERMS

### SECTION 1. PROJECT RULES

A.      The Construction Manager and the Contractors shall establish such reasonable Program Work rules that are not inconsistent with this Agreement or rules common in the industry and are reasonably related to the nature of work. These rules will be explained at the pre-job conference and posted at the Program Work sites and may be amended thereafter as necessary.   Notice of amendments will be provided to the appropriate Local Union.  Failure of an employee to observe these rules and regulations shall be grounds for discipline, including discharge. The fact that no order was posted prohibiting a certain type of misconduct shall not be a defense to an employee disciplined or discharged for such misconduct when the action taken is for cause.

B.      The parties adopt and incorporate the BCTC's Standards of Excellence as annexed hereto as Exhibit "B".

### SECTION 2. TOOLS OF THE TRADE

The welding/cutting torch and chain fall are tools of the trade having jurisdiction over the work performed. Employees using these tools shall perform any of the work of the trade. There shall be no restrictions on the emergency use of any tools or equipment by any qualified employee or on the use of any tools or equipment for the performance of work within the employee's jurisdiction.

Execution Copy 2015-2018

NYC AGENCY RENOVATION & REHAB CITY OWNED
BUILDINGS/STRUCTURES PLA

### SECTION 3. SUPERVISION

Employees shall work under the supervision of the craft foreperson or general foreperson.

### SECTION 4. TRAVEL ALLOWANCES

There shall be no payments for travel expenses, travel time, subsistence allowance or other such reimbursements or special pay except as expressly set forth in this Agreement.

### SECTION 5. FULL WORK DAY

Employees shall be at their work area at the starting time established by the Contractor, provided they are provided access to the work area. The signatories reaffirm their policy of a fair day's work for a fair day's wage.

### SECTION 6. COOPERATION AND WAIVER

The Construction Manager, Contractors and the Unions will cooperate in seeking any NYS Department of Labor, or any other government, approvals that may be needed for implementation of any terms of this Agreement. In addition, the Council, on their own behalf and on behalf of its participating affiliated Local Unions and their individual members, intend the provisions of this Agreement to control to the greatest extent permitted by law, notwithstanding contrary provisions of any applicable prevailing wage, or other, law and intend this Agreement to constitute a waiver of any such prevailing wage, or other, law to the greatest extent permissible only for work within the scope of this Agreement, including specifically, but not limited to those provisions relating to shift, night, and similar differentials and premiums.  This Agreement does not, however,

48

Execution Copy 2015-2018

NYC AGENCY RENOVATION & REHAB CITY OWNED
BUILDINGS/STRUCTURES PLA

constitute a waiver or modification of the prevailing wage schedules applicable to work not

covered by this Agreement.

### ARTICLE 18. SAVINGS AND SEPARABILITY

### SECTION 1. THIS AGREEMENT

In the event that the application of any provision of this Agreement is

enjoined, on either an interlocutory or permanent basis, or is otherwise determined to be in

violation of law, or if such application may cause the loss of Program funding or any New

York State Labor Law exemption for all or any part of the Program Work, the provision or

provisions involved (and/or its application to particular Program Work, as necessary) shall

be rendered, temporarily or permanently, null and void, but where practicable the

remainder of the Agreement shall remain in full force and effect to the extent allowed by

law (and to the extent no funding or exemption is lost), unless the part or parts so found to

be in violation of law or to cause such loss are wholly inseparable from the remaining

portions of the Agreement and/or are material to the purposes of the Agreement. In the

event a court of competent jurisdiction finds any portion of the Agreement to trigger the

foregoing, the parties will immediately enter into negotiations concerning the substance

affected by such decision for the purpose of achieving conformity with the court

determination and the intent of the parties hereto for contracts to be let in the future.

### SECTION 2. THE BID SPECIFICATIONS

In the event that the Agency's (or Construction Manager's) bid

specifications, or other action, requiring that a successful bidder (and subcontractor)

become signatory to this Agreement is enjoined, on either an interlocutory or permanent

49

NYC AGENCY RENOVATION & REHAB CITY OWNED
BUILDINGS/STRUCTURES PLA

basis, or is otherwise determined to be in violation of law, or may cause the loss of Program

funding or any New York State Labor Law exemption for all or any part of the Program

Work, such requirement (and/or its application to particular Program Work, as necessary)

shall be rendered, temporarily or permanently, null and void, but where practicable the

Agreement shall remain in full force and effect to the extent allowed by law and to the

extent no funding or exemption is lost). In such event, the Agreement shall remain in effect

for contracts already bid and awarded or in construction only where the Agency and

Contractor voluntarily accepts the Agreement. The parties will enter into negotiations as to

modifications to the Agreement to reflect the court or other action taken and the intent of

the parties for contracts to be let in the future.

### SECTION 3. NON-LIABILITY

In the event of an occurrence referenced in Section 1 or Section 2 of this

Article, neither the Agency, the Construction Manager, any Contractor, nor any Union

shall be liable, directly or indirectly, for any action taken, or not taken, to comply with any

court order or injunction, other determination, or in order to maintain funding or a New

York State Labor Law exemption for Program Work. Bid specifications will be issued in

conformance with court orders then in effect and no retroactive payments or other action

will be required if the original court determination is ultimately reversed.

### SECTION 4. NON-WAIVER

Nothing in this Article shall be construed as waiving the prohibitions of

Article 7 as to signatory Contractors and signatory Unions.

50

NYC AGENCY RENOVATION & REHAB CITY OWNED
BUILDINGS/STRUCTURES PLA

## ARTICLE 19 – FUTURE CHANGES IN SCHEDULE A AREA CONTRACTS

### SECTION 1. CHANGES TO AREA CONTRACTS

A.      Schedule A to this Agreement shall continue in full force and effect until the Contractor and/or Union parties to the Area Collective Bargaining Agreements that are the basis for the Schedule A notify the Agency and Construction Manager in writing of the changes agreed to in that Area Collective Bargaining which are applicable to work covered by this Agreement and their effective dates.

B. It is agreed that any provisions negotiated into Schedule A collective bargaining agreements will not apply to work under this Agreement if such provisions are less favorable to those uniformly required of contractors for construction work normally covered by those agreements; nor shall any provision be recognized or applied on Program Work if it may be construed to apply exclusively, or predominantly, to work covered by this Agreement.

C. Any disagreement between signatories to this Agreement over the incorporation into Schedule A of provisions agreed upon in the renegotiation of Area Collective Bargaining Agreements shall be resolved in accordance with the procedure set forth in Article 9 of this Agreement.

### SECTION 2. LABOR DISPUTES DURING AREA CONTRACT NEGOTIATIONS

The Unions agree that there will be no strikes, work stoppages, sympathy actions, picketing, slowdowns or other disruptive activity or other violations of Article 7 affecting the Program Work by any Local Union involved in the renegotiation of Area

51

NYC AGENCY RENOVATION & REHAB CITY OWNED
BUILDINGS/STRUCTURES PLA

Local Collective Bargaining Agreements nor shall there be any lock-out on such Program

Work affecting a Local Union during the course of such renegotiations.

## ARTICLE 20 - WORKERS' COMPENSATION ADR

### SECTION 1.

An ADR program may be negotiated and participation in the ADR Program

will be optional by trade.

## ARTICLE 21 - HELMETS TO HARDHATS

### SECTION 1.

The Contractors and the Unions recognize a desire to facilitate the entry

into the building and construction trades of veterans who are interested in careers in the

building and construction industry.  The Contractors and Unions agree to utilize the

services of the  New York City Helmets to Hardhats Program to serve as a resource for

preliminary orientation, assessment of construction aptitude, referral to apprenticeship

programs or hiring halls, counseling and mentoring, support network, employment

opportunities and other needs as identified by the parties.

### SECTION 2.

The Unions and Contractors agree to coordinate with the Program to create

and maintain an integrated database of veterans interested in working on this Project and of

52

NYC AGENCY RENOVATION & REHAB CITY OWNED
BUILDINGS/STRUCTURES PLA

apprenticeship and employment opportunities for this Project. To the extent permitted by

law, the Unions will give credit to such veterans for bona fide, provable past experience.

53

**4202**          THE CITY RECORD          FRIDAY, JULY 14, 2017

| NAME | | | NUM | SALARY | ACTION | PROV | EFF DATE | AGENCY |
|---|---|---|---|---|---|---|---|---|
| COHEN | ESTHER | | 04294 | $105.9188 | RESIGNED | YES | 06/06/17 | 466 |
| DIGNA | ILIR | | 04607 | $521.8000 | APPOINTED | YES | 05/28/17 | 466 |
| FOUST | MONICA | | 04607 | $121.8000 | APPOINTED | YES | 05/28/17 | 466 |
| GAMES | DEBORAH S | | 04293 | $131.3100 | APPOINTED | YES | 05/26/17 | 466 |
| GARCIA | ANNY G | | 04017 | $51253.0000 | APPOINTED | YES | 06/04/17 | 466 |
| EAUGHTON | PAUL M | | 04661 | $14.0300 | APPOINTED | YES | 05/30/17 | 466 |
| HUANG | PAOYI | | 04607 | $121.9000 | APPOINTED | YES | 05/28/17 | 466 |
| HUTCHISON | WILL C | | 04294 | $133.6800 | APPOINTED | YES | 05/28/17 | 466 |
| JOHN | ALLIANNA | | 04844 | $37349.0000 | INCREASE | NO | 06/02/17 | 466 |
| KNIGHT | CAROLYN | | 04841 | $33761.0000 | RESIGNED | NO | 06/02/17 | 466 |
| KNOX | NIGEL | | 04293 | $32.4400 | APPOINTED | YES | 05/28/17 | 466 |
| LABARAN | RUBY | | 10102 | $13.0000 | INCREASE | YES | 05/29/17 | 466 |
| LEVIN | MICHAEL T | | 04293 | $62.3500 | APPOINTED | YES | 06/02/17 | 466 |
| LIGAN | GHISLAIN | | 10102 | $13.2600 | RESIGNED | YES | 06/02/17 | 466 |
| LIGAN | GHISLAIN | | 10102 | $12.0000 | RESIGNED | YES | 06/01/17 | 466 |
| LIGAN | GHISLAIN | | 10102 | $12.0000 | RESIGNED | YES | 06/01/17 | 466 |
| LIGAN | GHISLAIN | | 10102 | $12.0000 | RESIGNED | YES | 06/02/17 | 466 |
| MORAN | CHARLES H | | 04294 | $121.3650 | APPOINTED | YES | 05/28/17 | 466 |
| MONTERO QUINTER HECTOR N | | | 04294 | $107.3850 | APPOINTED | YES | 05/28/17 | 466 |
| NADEAU | JAMES | | 04099 | $65817.0000 | APPOINTED | YES | 05/30/17 | 466 |
| FARELL | THADDEUS | | 04606 | $111.3100 | APPOINTED | YES | 05/28/17 | 466 |
| RAJENDRAN | KROSEMAN | | 04607 | $131.8500 | APPOINTED | YES | 05/28/17 | 466 |
| RODRIGUEZ | BRANDON | | 04844 | $33825.0000 | APPOINTED | NO | 06/02/17 | 466 |
| ULTIMO | CLARE | | 04293 | $162.6000 | APPOINTED | YES | 05/28/17 | 466 |

COMMUNITY COLLEGE (HOSTOS)
FOR PERIOD ENDING 06/16/17

| NAME | | | TITLE NUM | SALARY | ACTION | PROV | EFF DATE | AGENCY |
|---|---|---|---|---|---|---|---|---|
| BAKER | WILLIAM | | 04495 | $163.8713 | APPOINTED | YES | 05/26/17 | 468 |
| BUCKANAN | JASON M | | 04607 | $91.3500 | APPOINTED | YES | 05/28/17 | 468 |
| DIAZ | OLEN | | 04606 | $133.6470 | APPOINTED | YES | 05/28/17 | 468 |
| DORCELY | REGINALD | | 04608 | $125.6175 | APPOINTED | YES | 05/28/17 | 468 |
| FERNANDEZ | FRANCISC E | | 04606 | $257.8013 | APPOINTED | YES | 05/28/17 | 468 |
| FIGUEROA | SANDRA | | 04607 | $30.4500 | APPOINTED | YES | 05/21/17 | 468 |
| HENDERSON | FLOR M | | 04605 | $182.3413 | APPOINTED | YES | 05/28/17 | 468 |
| HOLLAND | SARAH L | | 04607 | $243.4500 | APPOINTED | YES | 05/28/17 | 468 |
| ITRIER STERLING THELMA | | | 04294 | $121.3650 | APPOINTED | YES | 05/28/17 | 468 |
| JIANG | BIAO | | 04607 | $60.9000 | APPOINTED | YES | 05/28/17 | 468 |
| JORDAN | HOWARD | | 04607 | $98.8088 | APPOINTED | YES | 05/29/17 | 468 |
| LANG | DAMARIS | | 04607 | $189.3900 | APPOINTED | YES | 05/28/17 | 468 |
| LAUGER | HAMIDE | | 04607 | $151.3920 | APPOINTED | YES | 05/28/17 | 468 |
| LEBRON | SIERRA Y | | 10102 | $13.5000 | APPOINTED | YES | 05/26/17 | 468 |
| LEU WAI GEE | PETAL C | | 04607 | $91.3500 | APPOINTED | YES | 05/28/17 | 468 |
| MAREE | GREGORY A | | 04606 | $98.4825 | APPOINTED | YES | 05/31/17 | 468 |
| MARTINEZ | MAXIMILI | | 10102 | $12.0000 | APPOINTED | YES | 05/30/17 | 468 |
| MATEO | DANIEL | | 04841 | $37741.0000 | RESIGNED | NO | 05/28/17 | 468 |
| MAYSONET | DANIEL | | 04605 | $141.0413 | APPOINTED | YES | 05/28/17 | 468 |
| MEJIA | PRISCILL | | 10102 | $15.0000 | APPOINTED | YES | 05/30/17 | 468 |
| MITCHELL | SHERREE A | | 04607 | $162.4000 | APPOINTED | YES | 05/28/17 | 468 |
| MONEZZO | MELISSA | | 10102 | $15.0000 | APPOINTED | YES | 05/30/17 | 468 |
| NIEVES | MADELYN M | | 04017 | $53758.0000 | RESIGNED | NO | 05/28/17 | 468 |
| NUNEZ CABRERA | LISSELOT | | 10102 | $13.5000 | APPOINTED | YES | 05/26/17 | 468 |
| ODICE | WILL | | 04698 | $320.6400 | APPOINTED | YES | 05/28/17 | 468 |
| OLMOS | JAIME F | | 04099 | $56428.0000 | APPOINTED | YES | 05/30/17 | 468 |
| ORDONCO | ALEXIS L | | 10102 | $15.2100 | APPOINTED | YES | 05/30/17 | 468 |
| OSIMEE | ALEXANDR | | 59698 | $220.6400 | APPOINTED | NO | 05/30/17 | 468 |
| PRINCE | TANVIR A | | 04606 | $195.9450 | APPOINTED | YES | 05/28/17 | 468 |
| RADA | WALTER D | | 04607 | $141.8000 | APPOINTED | YES | 05/28/17 | 468 |
| ROBERTSON | CLARENCE R | | 04608 | $80.5188 | APPOINTED | YES | 05/28/17 | 468 |
| RODRIGUEZ | MARIA M | | 04606 | $71665.0000 | RETIRED | YES | 06/01/17 | 468 |
| RONCA | KATHLEEN A | | 04607 | $73.0800 | APPOINTED | YES | 05/28/17 | 468 |
| ROSADO | ANA | | 04845 | $43923.0000 | RETIRED | NO | 06/01/17 | 468 |
| ROY | DEBASISH | | 04636 | $239.7925 | APPOINTED | YES | 05/28/17 | 468 |
| SAMO | WORL J | | 10102 | $13.5000 | APPOINTED | YES | 05/26/17 | 468 |
| SAINT PREUX | MARGUERI | | 10102 | $13.5000 | APPOINTED | YES | 05/26/17 | 468 |
| SONEL | MOHAMMAD A | | 04606 | $239.7925 | APPOINTED | YES | 05/28/17 | 468 |
| SONO | EDMR L | | 04607 | $121.8000 | APPOINTED | YES | 05/28/17 | 468 |
| VARGAS GABRIEL KATHRYN | | | 10102 | $13.5000 | APPOINTED | YES | 05/26/17 | 468 |
| WILLIAMS | SHENNEL G | | 10102 | $12.0000 | APPOINTED | YES | 05/30/17 | 468 |
| WISPE MOTA | ARLY A | | 10102 | $13.5000 | APPOINTED | YES | 05/26/17 | 468 |
| ZABUELA | JENNIFER C | | 10102 | $12.0000 | APPOINTED | YES | 05/26/17 | 468 |

COMMUNITY COLLEGE (LAGUARDIA)
FOR PERIOD ENDING 06/16/17

| NAME | | | TITLE NUM | SALARY | ACTION | PROV | EFF DATE | AGENCY |
|---|---|---|---|---|---|---|---|---|
| ABOUS-SALAAM | KEANNA | | 04841 | $26464.0000 | APPOINTED | YES | 06/04/17 | 469 |
| BRATMAN | RABTBA T | | 04099 | $56528.0000 | APPOINTED | YES | 06/01/17 | 469 |
| ESPINAL | FRANK | | 04099 | $56528.0000 | APPOINTED | YES | 05/06/17 | 469 |
| EVELYN | ELIJAH K | | 04844 | $33825.0000 | INCREASE | NO | 06/02/17 | 469 |
| GONZALEZ | GLORIA M | | 04661 | $14.0300 | APPOINTED | YES | 05/15/17 | 469 |
| RAMREP-RAJA | ALI E | | 04625 | $36.6400 | APPOINTED | YES | 05/28/17 | 469 |
| KANDMETZRITI | KAREN | | 04099 | $71723.0000 | RESIGNED | YES | 06/10/17 | 469 |
| LARTAL-RAMIR | HULYA | | 04880 | $101217.0000 | INCREASE | YES | 05/25/17 | 469 |
| LANOUR | WYNNIS | | 04688 | $42.9500 | APPOINTED | YES | 04/24/17 | 469 |
| LEE | DERRICK L | | 04099 | $56528.0000 | APPOINTED | YES | 05/30/17 | 469 |
| NIEVES | MADELYN M | | 04099 | $56528.0000 | APPOINTED | YES | 06/04/17 | 469 |
| SCHINDEL | TZIFORA W | | 04625 | $30.0000 | APPOINTED | YES | 04/27/17 | 469 |
| SCHWARTZ | PETER J | | 04625 | $35.6400 | APPOINTED | YES | 06/09/17 | 469 |
| VARULA | MATBJ | | 04625 | $36.6400 | APPOINTED | YES | 06/09/17 | 469 |
| WAGNER | GREGG T | | 04601 | $38.2800 | APPOINTED | YES | 05/17/17 | 469 |
| WONG | ALICE | | 04099 | $56528.0000 | APPOINTED | YES | 05/30/17 | 469 |
| ZABALA | MARIA M | | 04841 | $14.5500 | APPOINTED | YES | 05/12/17 | 469 |

HUNTER COLLEGE HIGH SCHOOL
FOR PERIOD ENDING 06/16/17

| NAME | | | TITLE NUM | SALARY | ACTION | PROV | EFF DATE | AGENCY |
|---|---|---|---|---|---|---|---|---|
| GOLDMAN | SHARON A | | 04617 | $176.2100 | APPOINTED | YES | 03/27/17 | 470 |

DEPARTMENT OF EDUCATION ADMIN
FOR PERIOD ENDING 06/16/17

| NAME | | | TITLE NUM | SALARY | ACTION | PROV | EFF DATE | AGENCY |
|---|---|---|---|---|---|---|---|---|
| ACBU | MONIQUE F | | 56058 | $65323.0000 | RESIGNED | YES | 03/23/17 | 740 |
| ADAMS | DI-AN N | | 54503 | $28323.0000 | APPOINTED | YES | 05/07/17 | 740 |
| ALLISON | RASHIDA | | 56073 | $50188.0000 | APPOINTED | YES | 05/30/17 | 740 |
| ALONZO | AMELIA K | | 54483 | $39505.0000 | APPOINTED | YES | 06/04/17 | 740 |
| AVITABILE | LINDA D | | 10063 | $93740.0000 | RESIGNED | YES | 05/23/17 | 740 |
| BACKMON | JAMES | | 56056 | $30097.0000 | RESIGNED | YES | 06/01/17 | 740 |
| BADRUZZAMAN | SYED | | 13632 | $87731.0000 | APPOINTED | YES | 06/04/17 | 740 |
| BARS | NANCY A | | 10022 | $97158.0000 | RESIGNED | NO | 05/23/17 | 740 |
| BATTLE | RUSSELL | | 13652 | $85822.0000 | INCREASE | NO | 05/16/17 | 740 |
| RAUTA | AMANDA F | | 54508 | $39792.0000 | APPOINTED | YES | 05/30/17 | 740 |
| BAXTER | MARLENE | | 56057 | $35592.0000 | APPOINTED | YES | 05/30/17 | 740 |
| BELLO | ZOILA G | | 54503 | $24626.0000 | APPOINTED | YES | 06/23/17 | 740 |
| BLACKMAN | TASHA | | 10124 | $50763.0000 | PROMOTED | NO | 05/11/17 | 740 |

DEPARTMENT OF EDUCATION ADMIN
FOR PERIOD ENDING 06/16/17

| NAME | | | TITLE NUM | SALARY | ACTION | PROV | EFF DATE | AGENCY |
|---|---|---|---|---|---|---|---|---|
| BOSGITH | YEVGENIY | | 10024 | $95717.0000 | TERMINATED | NO | 03/31/17 | 740 |
| BOUCHER -TURNER SHARON A | | | 54058 | $70000.0000 | APPOINTED | YES | 06/01/17 | 740 |
| BRASLOW | DAVID A | | 1006B | $87640.0000 | APPOINTED | YES | 06/01/17 | 740 |
| BROCK | KAYCHE | | 10068 | $100157.0000 | RESIGNED | YES | 06/04/17 | 740 |
| BROOKS | ROYLAND G | | 13750 | $45698.0000 | RESIGNED | YES | 05/19/17 | 740 |
| BULLOCK | DION | | 10031 | $89429.0000 | INCREASE | YES | 06/01/17 | 740 |
| BURROUGHS | VERONICA D | | 40510 | $46747.0000 | APPOINTED | YES | 06/04/17 | 740 |
| BURTON | EILEEN | | 10251 | $96175.0000 | RETIRED | NO | 06/06/17 | 740 |
| BURTON | ONANDOLY T | | 56057 | $50761.0000 | RETIRED | YES | 05/31/17 | 740 |
| CASTILLO | MURIELLE | | 56073 | $50100.0000 | APPOINTED | YES | 05/30/17 | 740 |
| CATAUDELLA | CRISISTOP | | 91915 | $361.4400 | APPOINTED | NO | 05/23/17 | 740 |
| CHEN | YU RING | | 40526 | $44624.0000 | APPOINTED | YES | 06/04/17 | 740 |
| CHEVALIER | JOSE | | 34262 | $80000.0000 | APPOINTED | YES | 05/30/17 | 740 |
| CHOWDHURY | BHASAT | | 13632 | $110110.0000 | APPOINTED | YES | 06/04/17 | 740 |
| COLE | RONALD A | | 54503 | $23041.0000 | APPOINTED | YES | 05/07/17 | 740 |
| CORDERO | ANDRES | | 56056 | $32307.0000 | DISMISSED | YES | 05/19/17 | 740 |
| COVINGTON | BRANDI | | 56057 | $40929.0000 | RESIGNED | YES | 05/14/17 | 740 |
| CRESPO | SAMUEL | | 10124 | $62024.0000 | PROMOTED | NO | 05/11/17 | 740 |
| CRUZ | DIANA | | 54483 | $45430.0000 | RESIGNED | YES | 06/01/17 | 740 |
| CUANTAS | MICHELLE | | 1006B | $82803.0000 | RESIGNED | YES | 06/01/17 | 740 |
| DAVIS | LISA E | | 54483 | $39505.0000 | APPOINTED | YES | 06/04/17 | 740 |
| DELANE | DEBORAH | | 56057 | $85800.0000 | APPOINTED | YES | 05/30/17 | 740 |
| DENNIS | PETER B | | 13622 | $94397.0000 | APPOINTED | YES | 06/04/17 | 740 |
| DHARIA | PURVI | | 10031 | $97406.0000 | INCREASE | YES | 06/01/17 | 740 |
| DIAZ SALAZAR | NOEMI | | 56057 | $35592.0000 | RESIGNED | YES | 05/16/17 | 740 |

**LATE NOTICE**

## POLICE

■ SOLICITATION

*Services (other than human services)*

**PLASTERING AND PAINTING** - Competitive Sealed Bids - PIN# 05617B0010 - Due 8-8-17 at 2:00 P.M.

The New York City Police Department seeks a vendor for furnishing all labor and material necessary and required for a multi-year requirement contract for plastering, interior and exterior painting at various police department facilities - EPIN 05617B0010 - Agency PIN 05617000012134. If you are interested, you may obtain a free copy of the bid package in 3 ways: (1) Online at www.nyc.gov/cityrecord, (2) In person, Monday - Friday, 9:00 A.M. - 5:00 P.M., at Contract Administration Unit, 90 Church Street, 12th Floor, Room 1206, New York, NY 10007, or (3) Contact Stephanie Gallop at (646) 610-5225. A mandatory Pre-Bid Conference will be held at 10:00 A.M., on Wednesday, July 19, 2017, at the NYCPD Building Maintenance Section, 59-06 Brooklyn Queens Expressway, Woodside, NY 11377. This procurement is subject to participation goals for MBEs and/or WBEs as required by Local Law 1 of 2013.

*Use the following address unless otherwise specified in notice, to secure, examine or submit bid/proposal documents, vendor prequalification and other forms; specifications/blueprints; other information; and for opening and reading of bids at date and time specified above.*

*Police, 90 Church Street, 12th Floor, Room 1206, New York, NY 10007. Stephanie Gallop (646) 610-5225; Fax: (646) 610-5224; contracts@nypd.org*

Accessibility questions: Yolanda Morillo (716) 476-6477/6898, by: Tuesday, July 18, 2017, 1:00 P.M.

● jy14

FILED: NEW YORK COUNTY CLERK 03/12/2018 01:32 PM
INDEX NO. 450415/2018
NYSCEF DOC. NO. Case 1:18-cv-02313-GHW Document 1-1 Filed 03/15/18 Page 79 of 86
RECEIVED NYSCEF: 03/12/2018
City Record - Preview ad in CROL
Page 1 of 1

**Services (other than human services)**

**BID EXTENSION: PLASTERING AND PAINTING** - Competitive Sealed Bids - PIN# 05617B0010 - Due 9-12-17 at 2:00 P.M.

BID EXTENSION: The New York City Police Department seeks a vendor for furnishing all labor and material necessary and required for a multi-year requirement contract for plastering, interior and exterior painting at various police department facilities – EPIN 05617B0010 - Agency PIN 0561700001213. If you are interested, you may obtain a free copy of the bid package in 3 ways: (1) Online at www.nyc.gov/cityrecord, (2) In person, Monday – Friday, 9 a.m. – 5 p.m. at Contract Administration Unit, 90 Church Street, 12th Floor, Room 1206, New York, NY 10007, or (3) Contact Stephanie Gallop at (646) 610-5225. A mandatory pre-bid conference will be held 11:00 a.m. on Tuesday, August 22, 2017 at the NYCPD Building Maintenance Section, 59-06 Brooklyn Queens Expressway, Woodside, New York 11377. This procurement is subject to participation goals for MBEs and/or WBEs as required by Local Law 1 of 2013.

Accessibility questions: Yolanda Morillo
716-476-6477/6898 by 8/18/2017 1:00 PM

| Due Date | Solicitation | Agency | Contact | Address |
|---|---|---|---|---|
| 9/12/2017 | Competitive Sealed Bids | NYPD | Stephanie Gallop Phone: (646) 610-5225 Fax: (646) 610-5224 contracts@nypd.org | 90 Church Street, 12th Floor, Room 1206, New York, New York 10007 |
| **Published** 8/15/2017 | | | | |

FILED: NEW YORK COUNTY CLERK 03/12/2018 01:32 PM INDEX NO. 450415/2018
NYSCEF DOC. NO. Case 1:18-cv-02313-GHW Document 1-1 Filed 03/15/18 Page 80 of 86 NYSCEF: 03/12/2018

**Click here to access the notice online or copy the CROL URL of the notice below:**

https://a856-cityrecord.nyc.gov/RequestDetail/20171003019

**Services (other than human services)**

**BID EXTENSION: PLASTERING AND PAINTING** - Competitive Sealed Bids - PIN# 05617B0010 - Due 10-13-17 at 2:00 P.M.

BID EXTENSION: An addendum was issued in accordance with Section 3-02(i) of the Procurement Policy Board Rules to notify potential vendors for the above procurement. Regarding the above referenced solicitation, it has been brought to our attention that clarification is required to assist vendors in the preparation of a fair and competitive sealed bid (CSB) on this project.

Accessibility questions: Yolanda Morillo
716-476-6477/6898 by 10/9/2017 1:00 PM

| Due Date | Solicitation | Agency | Contact | Address |
|---|---|---|---|---|
| 10/13/2017 | Competitive Sealed Bids | NYPD | Stephanie Gallop Phone: (646) 610-5225 Fax: (646) 610-5224 contracts@nypd.org | 90 Church Street, 12th Floor, Room 1206, New York, New York 10007 |

**Published**
10/4/2017

### [STEP 1 GRIEVANCE FORM]
### <u>NOTICE OF GRIEVANCE UNDER PLA'</u>

**Project Location: Various NYPD Facilities**

**PLA: NYC Agency Renovation and Rehab of City owned Buildings/Structures**

**Grievance: Excluded Multi – Year Contract for Plastering, Painting & Exterior Painting at Various NYPD Facilities (Agency Pin 0561700001213, EPIN 05617B0010) Contract from under Existing Project labor Agreement**

**Date of Alleged Violation: About July 14th through October 14, 2017**

**Applicable PLA Provisions: Article 2, Section 1 & 6 and Article 3 Section 1**

**General Contractor: Police Department (Contract Administration Unit)**

Contact Info: **Frank Bello**
        Phone: (646) 610-5225
        Fax:    (646) 610-5224
        Email: Frank.Bello@nypd.org
        Address: 90 Church Street, Room 1206, 12th Floor
            New York, NY 10007

**CM/Owner/Developer:**
        NYC, NYPD

**Submitted by: Richard Small**

Signatures:

**Affiliated Local: District Council 9**
Contact Info: **Richard Small**
        Phone: (646) 209-8075
        Fax:    (212) 255-1151
        Email: Rsixmen@aol.com

December 12, 2017



Zachary W. Carter
*Corporation Counsel*

THE CITY OF NEW YORK
# LAW DEPARTMENT
100 CHURCH STREET
NEW YORK, NY 10007

Lindsey M. James
ljames@law.nyc.gov
Contracts and Real Estate
Phone: (212) 356-3182

January 3rd, 2018

Richard Small, DC9 Business Representative
Phone: (646) 209-8075
Email: rsmall@dc9.net

Dear Mr. Small:

I write in response to your Step 1 Grievance Form dated December 12, 2017, seeking to submit a grievance regarding a New York City Police Department ("NYPD") multi-year contract for plastering and painting (EPIN 05617B0010). The Step 1 Grievance Form refers to violations of Article 2, Section 1 & 6 and Article 3, Section 1, of the 2015- 2018 Project Labor Agreement covering Specified Renovation & Rehabilitation of City Owned Buildings and Structures ("PLA") because this contract was "excluded" from the PLA.

Please be advised that this grievance is untimely pursuant to Article 9, Section 1 of the PLA. This provision provides that if a grievance is challenging an Agency's determination that the contract is not subject to the PLA, notice of the grievance must be given no later than 10 days prior to the bid opening and shall be submitted to the Labor Management Committee in the first instance, rather than Step 1. This is an important provision, necessary to protect City contractors from having their bids publicly opened and disclosed to their competitors only to have the initial bids rescinded and forced into a new competition. The bids for this contract were opened, as published in the City Register, on October 13, 2017. Further, the PLA does not provide for a Step 2 meeting for grievances of this nature and so the January 9th meeting is not needed.

Although this grievance is not timely and therefore NYPD will proceed with the contract award, we do want to engage with the BCTC and its locals regarding the substantive issue raised in your letter and intend to discuss it with the BCTC at a Labor Management Committee meeting which should be scheduled in early 2018. Should you wish to discuss this further, please reach out.

Sincerely,

Lindsey James
Senior Counsel

CC:

Richard Small, DC9 Business Representative
Phone: (646) 209-8075
Fax:      (212) 255-1151
Email: rsmall@dc9.net

Gary LaBarbera, President
Building and Construction
Trades Council of Greater New York
71 West 23rd Street
New York, NY 10010
glabarbera@nycbuildingtrades.org

Steven Stein Cushman
Office of the Corporation Counsel
100 Church Street
New York, NY 10007

Carol O'Rourke Pennington (via email only)



**Barnes, Iaccarino & Shepherd LLP**
ATTORNEYS AT LAW

Riccardo Iaccarino
Wendell V. Shepherd

Michael C. Anderson
Matthew J. Berger*
Danielle M. Carney
Michele Harari
Dana L. Henke
Steven H. Kern
Lauren M. Kugielska*
Giacchino J. Russo

Roy Barnes, Retired from the Firm

3 Surrey Lane
Hempstead, New York 11550
Tel: (516) 483-2990
Fax: (516) 483-0566

29 Legion Drive
Bergenfield, NJ 07621
(201) 387-2600

* Also Admitted in NJ

258 Saw Mill River Road
Elmsford, New York 10523
Tel: (914) 592-1515
Fax: (914) 592-3213

February 23, 2018

*By email:  arbradel@yahoo.com*
Richard Adelman, Arbitrator
1175 York Avenue, Apt. 10D
New York, NY  10065

Re:     NYC Agency Renovation & Rehabilitation PLA
        Scope of work covered – Contract for Plastering,
        Interior & Exterior Painting at various NYPD
        Facilities

Dear Arbitrator Adelman:

This firm represents District Council 9, International Union of Painters & Allied Trades, AFL-CIO ("DC-9").

The Union and NYPD are parties to the above Project Labor Agreement which designates certain arbitrators including you for arbitration of disputes. A dispute has arisen concerning the above matter which the Union desires to arbitrate.

Contact information by email for other parties is indicated below in the  "cc's".

Kindly contact us at your earliest convenience regarding scheduling a hearing.

Yours truly,

Steven H. Kern, Esq.

SHK/id

cc: Carol O'Rourke Pennington, Esq., Counsel to Council (cop@cohmlaw.com)
    Frank Bello, NYPD Contract Administration Unit (Frank.Bello@nypd.org)
    Lindsey M. James, Esq., NYC Law Dept. (ljames@law.nyc.gov)



Zachary W. Carter
*Corporation Counsel*

THE CITY OF NEW YORK

LAW DEPARTMENT

100 CHURCH STREET
NEW YORK, NY 10007

Lindsey M. James
ljames@law.nyc.gov
Contracts and Real Estate
Phone:  (212) 356-3182

February 27, 2018

Richard Adelman, Arbitrator
1175 York Avenue, Apt. 10D
New York, NY 10065
Email:arbradel@yahoo.com

Dear Arbitrator Adelman:

I write in response to the February 23, 2018 letter of Mr. Steve Kern seeking to schedule an arbitration hearing regarding a dispute brought by District Council 9 ("DC9"), and your subsequent email seeking to schedule a hearing for March 19th, 2018. It is the position of the City of New York that a hearing should not be scheduled nor can this dispute be arbitrated as the grievance brought by District Council 9 is untimely pursuant to the terms of the Project Labor Agreement ("PLA") referenced in Mr. Kern's letter and therefore, null and void.

The dispute DC9 seeks to arbitrate is a challenge to an agency's determination that this contract was not subject to the PLA. Pursuant to Article 9, Section 1 of the PLA:

> "Grievances as to whether a scope of work is included or excluded from this Agreement shall be submitted to the Labor Management Committee in the first instance rather than Step 1 below. To be timely, such notice must be given no later than ten days prior to a bid opening if the grievance is challenging a determination by an Agency that the contract is not subject to this Agreement."

This is an important provision, necessary to protect City contractors from having their bids publicly opened and disclosed to their competitors only to have the initial bids rescinded and forced into a new competition. The solicitation notice for the subject contract was publicly advertised in the City Record on July 14, 2017. Subsequent extensions for the bid due date were published on August 15, 2017 and October 4, 2017 and the bids were opened on October 13, 2017. District Council 9 did not provide the City with notice of its grievance until December 12, 2017, nearly two months after the bids were opened. In Article 9, Step 3 (b), the PLA explicitly states:

"Failure of the grieving party to adhere to the time limits set forth in this Article shall render the grievance null and void. These time limits may be extended only by written consent of the Construction Manager (or designee), involved Contractor and involved Local Union at the particular step where the extension is agreed upon. The Arbitrator shall have authority to make decisions only on the issues presented to him and shall not have the authority to change, add to, delete or modify any provision of this agreement."

In this case, DC9 wholly failed to adhere to the time limits outlined in the PLA. There was no extension of the time limit to bring this grievance. As such, the grievance is void and is not subject to the jurisdiction of the Arbitrator.

Should you wish to discuss this further, please feel free to contact me at (212) 356-3182 or at ljames@law.nyc.gov.

Respectfully,

Lindsey James
Senior Counsel

CC:

Steven H. Kern, Esq
Barnes, Iaccarino & Shepherd LLP
258 Saw Mill River Road
Elmsford, New York 10523

Carol O'Rourke Pennington (via email only)

Steven Stein Cushman
(via email only)